[No. 61226-9. En Banc. November 10, 1994.]

THE STATE OF WASHINGTON, *Petitioner*, v. MARK S. WILSON, *Respondent*.

*C. Danny Clem, Prosecuting Attorney,* and *Pamela B. Loginsky* and *Lucretia A. Fishburn, Deputies,* for petitioner.

*Mark S. Wilson,* pro se.

*James L. Reese III,* amicus curiae for respondent.

Guy, J. — Mark Wilson discharged several bullets from a firearm into a tavern after being asked to leave for argumentative behavior. The bullets from Wilson's gun missed his intended victims, the bartender who had ousted him and

a patron he had threatened, but did strike two unintended victims. A jury convicted Wilson on four counts of assault in the first degree. RCW 9A.36.011. The Court of Appeals vacated two convictions of assault in the first degree committed against the two unintended victims. The Court of Appeals ruled the trial court erred in allowing proof of Wilson's intent to inflict great bodily harm on his intended victims to support charges of assault in the first degree against the two unintended victims. We disagree. Under a literal interpretation of RCW 9A.36.011, once the intent to inflict great bodily harm against an intended victim is established, the statute allows the intent to transfer to unintended victims. It is RCW 9A.36.011, not the doctrine of transferred intent, which provides: intent against one is intent against all. Accordingly, the Court of Appeals' decision is reversed in part and the case is remanded to superior court for resentencing.

### BACKGROUND

During the evening of January 5, 1990, Defendant Mark Wilson entered the Old Town Tavern in Silverdale, Washington. Without delay, Wilson started an argument with a man standing next to the door. Freda Jones, a bartender at the tavern acquainted with Wilson, told both Wilson and the other man to quit arguing. The other man left the tavern. Wilson then sat next to a second man and started yet another argument. Jones told Wilson he was too loud and too argumentative and to "[j]ust stop it". The second man left the tavern. Wilson next moved to the pool table area and engaged a third patron in an argument. Wanting decorum, Jones asked Wilson to leave and informed him that he could not return until he spoke with the owner. After defending his behavior, Wilson left the tavern.

Jones then talked with Patty Becker and Merry Judd, patrons who were sitting at the bar next to the tavern's large plate glass window facing the street. Jones sat on a stool opposite Becker and Judd. Approximately 7 to 10 minutes later, Jones left her stool to place Wilson's name on

the tavern's so-called "86 list", a record of patrons not allowed in the tavern without the consent of the owner. While Jones was writing Wilson's name on the list, Wilson reentered the tavern. Jones informed Wilson that he was "86'd". Jones testified, "I . . . didn't stop yelling at him until he left." Before leaving, Wilson pointed at Jones and said, "You will never leave this tavern alive tonight." Wilson also told Merry Judd, "Merry, don't leave the bar alone."

Minutes later, three bullets pierced the tavern's large plate glass window facing the street. At the time of the shooting, Bryan Hurles, a tavern employee, was standing behind the bar talking with Becker and Judd. After hearing the first gun shot, Hurles jumped over the bar and pushed Becker and Judd to the floor. Hurles then stood up to look out the tavern's window when he was struck in the neck by a bullet. The bullet was not removed and is now lodged between Hurles' first vertebra and his skull. James Hensley, another tavern patron, was sitting on a stool at the bar when the shooting started. Hensley testified that he was diving for the floor when a bullet struck him in the side near his rib cage. The two women threatened by Wilson, Jones and Judd, were in the vicinity of where the bullets were fired, but neither woman was hit. Judd was safely pushed to the floor by Hurles, while Jones had stepped into a kitchen hallway immediately prior to the shooting.

Although most of the people in the tavern did not see who had fired the shots, Becker testified she saw Wilson standing outside the tavern with a gun immediately before the shooting started. Hurles testified he saw a silhouette of the shooter and that the hairstyle and shape of the shooter's face were similar to Wilson's. Based on these facts, the State charged Wilson with four counts of assault in the first degree. RCW 9A.36.011. The State charged Wilson with assaulting Jones and Judd, the two women verbally threatened, and Hensley and Hurles, the two men actually shot.

Wilson was convicted by a jury on April 11, 1990, on all four counts of assault in the first degree. The jury found beyond a reasonable doubt that on or about the 5th day of

January 1990, Wilson assaulted Hensley, Hurles, Jones, and Judd with a firearm; and that Wilson acted with the intent to inflict great bodily harm upon Jones or Judd or both. Wilson was also convicted on one count of harassment, a criminal charge unrelated to the assaults but joined for trial. The Superior Court sentenced Wilson on June 5, 1990, to four 240-month concurrent sentences under RCW 9.94A.400(1)(a).

Wilson appealed his convictions to the Court of Appeals. The Court of Appeals affirmed the two convictions against the two intended victims, Jones and Judd, but vacated the two convictions against the two unintended victims, Hensley and Hurles. The Court of Appeals concluded the doctrine of transferred intent does not apply under the assault statutes if the defendant successfully assaulted his or her intended victim. The Court of Appeals also affirmed the harassment conviction and the Superior Court's decision to join the harassment and assault counts for trial under CrR 4.3(a)(1). *State v. Wilson*, 71 Wn. App. 880, 863 P.2d 116 (1993). Both Wilson and the State filed Petitions for Discretionary Review challenging the Court of Appeals' decision. The State's Petition for Review was granted.

ISSUES

The primary issue is whether, under RCW 9A.36.011, an intent to inflict great bodily harm upon an intended victim transfers to an unintended victim. Also at issue is whether Wilson's four convictions for assault in the first degree are required to be served consecutively under RCW 9.94A.400(1)(b). We answer both questions in the affirmative.

ANALYSIS

I

 This court has the ultimate authority to determine the meaning and purpose of a state statute. *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992). The purpose of statutory construction is to give content and force to the language used by the Legislature. *In re Williams*, 121 Wn.2d 655, 663, 853 P.2d 444 (1993). When interpreting a criminal

statute, a literal and strict interpretation must be given. *See State v. Hornaday,* 105 Wn.2d 120, 127, 713 P.2d 71 (1986); *State v. McGee,* 122 Wn.2d 783, 795, 864 P.2d 912 (1993) (Brachtenbach, J., concurring). Plain language does not require construction. *State v. Thornton,* 119 Wn.2d 578, 580, 835 P.2d 216 (1992).

Assault in the first degree is defined by the Legislature in RCW 9A.36.011:

> (1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:
>
> (a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death; or
>
> (b) Administers to or causes to be taken by another, poison or any other destructive or noxious substance; or
>
> (c) Assaults another and inflicts great bodily harm.
>
> (2) Assault in the first degree is a class A felony.

A person acts with intent when he or she acts with the objective or purpose to accomplish a result constituting a crime. RCW 9A.08.010(1)(a). " 'Evidence of intent . . . is to be gathered from all of the circumstances of the case, including not only the manner and act of inflicting the wound, but also the nature of the prior relationship and any previous threats.' " *State v. Ferreira,* 69 Wn. App. 465, 468, 850 P.2d 541 (1993) (quoting *State v. Woo Won Choi,* 55 Wn. App. 895, 906, 781 P.2d 505 (1989), *review denied,* 114 Wn.2d 1002 (1990)). Specific intent cannot be presumed, but it can be inferred as a logical probability from all the facts and circumstances. *State v. Louther,* 22 Wn.2d 497, 502, 156 P.2d 672 (1945); *State v. Salamanca,* 69 Wn. App. 817, 826, 851 P.2d 1242, *review denied,* 122 Wn.2d 1020 (1993).

The term "great bodily harm" is defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ". RCW 9A.04.110(4)(c).

The term "assault" is not defined in the criminal code, and thus Washington courts have turned to the common law for its definition. *State v. Aumick,* 73 Wn. App. 379, 382, 869

P.2d 421 (1994); *State v. Hupe*, 50 Wn. App. 277, 282, 748 P.2d 263, *review denied*, 110 Wn.2d 1019 (1988). Three definitions of assault are recognized in Washington:

> (1) an attempt, with unlawful force, to inflict bodily injury upon another [attempted battery]; (2) an unlawful touching with criminal intent [actual battery]; and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting that harm [common law assault].

*State v. Bland*, 71 Wn. App. 345, 353, 860 P.2d 1046 (1993) (quoting *State v. Walden*, 67 Wn. App. 891, 893-94, 841 P.2d 81 (1992)); *Aumick*, 73 Wn. App. at 382; *see also* 13A Royce A. Ferguson, Jr. & Seth A. Fine, Wash. Prac., *Criminal Law* § 404, at 49 (1990).

■ Under a literal interpretation of RCW 9A.36.011, a person is guilty of assault in the first degree if he or she, with the intent to inflict great bodily harm, assaults another with a firearm, administers poison to another, or assaults another person and causes great bodily harm. The mens rea for this crime is the "intent to inflict great bodily harm". Assault in the first degree requires a specific intent; but it does not, under all circumstances, require that the specific intent match a specific victim. Consequently, once the intent to inflict great bodily harm is established, usually by proving that the defendant intended to inflict great bodily harm on a specific person, the mens rea is transferred under RCW 9A.36.011 to any unintended victim.

Reading the various assault statutes, in combination with the common law definitions for assault, we are persuaded that Wilson assaulted Hurles and Hensley in the first degree when, with an intent to cause great bodily harm to Jones or Judd or both, Wilson discharged bullets from a firearm into the neck of Hurles and into the side of Hensley.[1] Even though Wilson may not have intended to assault Hensley and Hurles, both men were the unintended victims of Wilson's intentional assault on Jones and Judd. Under a literal

---

[1] The convictions for assault in the first degree committed against Jones and Judd were affirmed by the Court of Appeals and are not before this court. *State v. Wilson*, 71 Wn. App. 880, 893, 863 P.2d 116 (1993).

interpretation of RCW 9A.36.011, Wilson assaulted Hensley and Hurles.

The Court of Appeals vacated the two assault in the first degree convictions committed against the two unintended victims, Hensley and Hurles. The Court of Appeals concluded the doctrine of transferred intent does not apply under RCW 9A.36.011 if a defendant successfully assaults his or her intended victim or victims.

> There is no reason justifying use of the legal fiction known as transferred intent to prove that Wilson assaulted Hurles and Hensley in the first degree. The State tried, convicted, and sentenced Wilson for offenses against his intended victims, the seriousness of which was consistent with his state of mind. It was error for the trial court to allow proof of Wilson's intent to inflict great bodily harm against Jones and Judd to support charges of assault in the first degree against Jones and Judd and against Hurles and Hensley.

*State v. Wilson*, 71 Wn. App. at 890.

We hold the doctrine of transferred intent is unnecessary to convict Wilson of assaulting Hensley and Hurles in the first degree. Under a literal interpretation of RCW 9A.36-.011, once the mens rea is established, RCW 9A.36.011, not the doctrine of transferred intent, provides that any unintended victim is assaulted if they fall within the terms and conditions of the statute. Transferred intent is only required when a criminal statute matches specific intent with a specific victim. RCW 9A.36.011 does not include such a rigid requirement. The decision of the Court of Appeals vacating the two convictions of assault in the first degree against Hensley and Hurles is reversed.

## II

We reinstate two convictions against Wilson for assault in the first degree, for a total of four convictions of assault in the first degree. The next question is whether Wilson's four assault convictions are required to be served consecutively under the "serious violent" exception in former RCW 9.94A.400(1)(b).[2]

---

[2]RCW 9.94A.400(1)(b) was amended by Laws of 1990, ch. 3, § 704 to require a consecutive sentence whenever a person is convicted of *two* or more serious

Former RCW 9.94A.400(1)(b) provides for mandatory consecutive sentences "[w]henever a person is convicted of three or more serious violent offenses, as defined in RCW 9.94A-.030, arising from separate and distinct criminal conduct".

Assault in the first degree is listed as a "[s]erious violent offense". RCW 9.94A.030(27). The question, then, is whether Wilson's four assaults, involving four victims, originated from "separate and distinct criminal conduct".

■ ■ The Superior Court, relying on the doctrine of transferred intent, concluded that no more than two separate and distinct criminal acts occurred and ordered Wilson's four assault convictions to be served concurrently under RCW 9.94A.400(1)(a). We disagree with the Superior Court's conclusion. Four assaults, involving four victims, involve four separate and distinct criminal acts — one act for each victim. This conclusion is in accordance with what the "serious violent" exception was designed to accomplish: a significant increase in punishment for certain multiple violent offenders. David Boerner, *Sentencing in Washington* § 5.8(b), at 5-19 (1985).

In *State v. Salamanca, supra,* the defendant was convicted of five counts of accomplice to first degree assault after he drove a vehicle from which multiple gun shots were fired at another vehicle in which five passengers were present. The Court of Appeals affirmed the trial court's decision that for purposes of determining whether the five sentences should be served consecutively under RCW 9.94A.400(1)(b), the act of shooting into a vehicle with five passengers created as many victims as there were persons in the vehicle. *Salamanca,* 69 Wn. App. at 827-28. The Court of Appeals ruled, "[t]he assaults in this case arise from separate and distinct conduct because they involve separate and distinct victims." *Salamanca,* 69 Wn. App. at 828; *State v. Godwin,* 57 Wn. App. 760, 763-64, 790 P.2d 641 (crimes involving separate victims necessarily arise from separate and distinct conduct, regardless of the factual relationship between the

violent offenses. The amended statute, effective July 1, 1990, does not apply to the facts of this case.

offenses), *review denied*, 115 Wn.2d 1006 (1990); D. Boerner, at 5-19 (sentencing illustration under the "serious violent" exception for a defendant convicted on four counts of rape in the first degree).

Wilson was convicted by a jury on four counts of assault in the first degree. The Court of Appeals vacated two convictions and we reinstate those two convictions. Wilson is presently convicted on four counts of assault in the first degree. Assault in the first degree is a "serious violent offense". Further, Wilson's four convictions for assault in the first degree involved four separate and distinct criminal acts. Wilson assaulted four people: Jones, Judd, Hurles, and Hensley. Because the requirements of former RCW 9.94A.400(1)(b) are satisfied, we hold Wilson's four convictions for assault in the first degree are required to be served consecutively.

## CONCLUSION

We hold Wilson's intent to inflict great bodily harm against Jones or Judd or both permits the convictions of assault in the first degree against Hensley and Hurles to be affirmed. We also rule under the "serious violent" exception in former RCW 9.94A.400(1)(b) that Wilson's four assault convictions are required to be served consecutively. We reverse the Court of Appeals in part and remand the case to superior court for resentencing.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, JOHNSON, and MADSEN, JJ., concur.