# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

RACHELLE HONEYCUTT and ) No. 74338-4-I
GABRIEL WESTERGREEN, )
)
Appellants, )
) DIVISION ONE
v. )
)
WASHINGTON STATE, DEPARTMENT)
OF LABOR & INDUSTRIES, )
) PUBLISHED OPINION
Respondents, )
and )
)
PHILLIPS 66 COMPANY, )
)
Intervenors. ) FILED: January 30, 2017

SPEARMAN, J. — The family care act (FCA), chapter 49.12 RCW, does not require employers to provide paid leave. But where an employer provides paid leave for an employee's own use, the FCA mandates that the employee may use that leave to care for an eligible family member. RCW 49.12.270. If more than one type of leave is available, the employee may choose which type of "sick leave or other paid time off" to use for family care. RCW 49.12.270(1). When an employee takes time off to care for a sick family member and the employer does not allow paid time off "for illness," the FCA allows the employee to access paid leave provided through a disability plan. RCW 49.12.265(5). Disability plans

maintained through insurance or governed by the employee security retirement income security act of 1974 (ERISA)[1] are exempt from this provision of the FCA. Id.

We are asked to decide whether, in the context of the FCA, time allowed to an employee "for illness" is the equivalent of "sick leave." We conclude that it is and reverse the Department of Labor & Industries' (Department) ruling to the contrary. We remand for a determination of whether Phillips 66 Company's disability plan is exempt from the FCA because it is maintained through insurance or governed by ERISA.

## FACTS

Phillips 66 does not provide sick leave. When employees of Phillips 66 miss work due to illness, they may receive paid time off through a short term disability (STD) plan. The STD plan functions much like traditional sick leave. To use STD benefits, an employee notifies a supervisor within twenty-four hours of an absence due to illness or injury. If such an absence lasts five or more days, the employee must provide a medical certificate. Based on the length of time an employee has worked for Phillips 66, the STD plan provides full pay for one to twenty-six weeks and sixty percent pay for the remaining weeks in a calendar year. STD benefits are reduced by any state mandated sick pay the employee is eligible to receive.

Under a collective bargaining agreement (CBA), Phillips 66 also provides employees with two paid personal holidays each year and a number of paid

---

[1] 29 U.S.C. §1001 et seq.

vacation days based on the length of time the employee has worked for the company. Employees bid for specific vacation days each fall for the subsequent calendar year. Vacation days are provided for the purpose of "rest and recreation." Clerk's Papers (CP) at 315. However, Phillips 66 permits employees to use vacation days or personal holidays instead of STD benefits when they miss work due to illness.

When an employee takes time off to care for a sick family member, the company allows the employee to use any available personal or vacation days. Phillips 66 does not allow employees to use STD benefits to care for a family member.

Rachelle Honeycutt and Daniel Westergreen work at a refinery operated by Phillips 66. In 2013, Honeycutt and Westergreen ("Honeycutt" or "the employees") both requested leave from work to care for sick family members. Phillips 66 approved the absences and gave the employees the option of using vacation days or taking time off without pay. The employees took time off without pay because they had already bid for vacation slots and made plans for those days.

The employees contacted their union, United Steelworkers Local 12-590. The union demanded that the company allow employees to access STD benefits to care for sick family members as required by the FCA. Phillips 66 took the position that its STD plan is an ERISA plan to which the FCA does not apply.

Honeycutt filed a complaint with the Department of Labor & Industries. The Department determined that Phillips 66 did not violate the FCA. The

3

Department concluded that the FCA only reaches a disability plan if that plan is the only means by which an employee may receive paid leave for illness. Because Phillips 66's employees may use vacation days for illness, the Department ruled that the FCA's provision for reaching disability plans did not apply. The Department did not rule on whether Philips 66's STD plan was governed by ERISA.

An administrative law judge (ALJ) affirmed the Department's decision.[2] The ALJ did not rule on whether Phillips 66's STD plan was exempt from ERISA. The director of the Department adopted the ALJ's findings of fact and conclusions of law and affirmed the ruling. The employees appealed to Whatcom County Superior Court, which also affirmed the Department's decision. Honeycutt appealed to this court.

## DISCUSSION

The Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of final agency decisions. RCW 34.05.070. In reviewing an agency decision, we sit in the same position as the superior court. Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 244, 350 P.3d 647 (2015) (citing Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008)). We review the final agency decision and apply APA standards directly to the record that was

---

[2] The ALJ supported its ruling with slightly different reasoning than the Department. In its determination of compliance, the Department reasoned that the FCA did not reach Phillips 66's STD plan because the company allows employees to use vacation days for their own illness. The ALJ reasoned that the FCA does not reach the company's STD plan because the employees could have used vacation days to care for a sick family member.

4

before the agency. Id. An agency's action is invalid if the agency interpreted or applied the law erroneously. RCW 34.05.570(3)(d).

The parties dispute the interpretation of RCW 49.12.265(5), which defines "sick leave or other paid time off" for purposes of the FCA. The meaning of a statute is a question of law that we review de novo. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002) (citing State v. Breazeale, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001)).

Our primary duty in interpreting a statute is to "discern and implement the intent of the legislature." State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (citing Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wn.2d 9, 19, 978 P.2d 481 (1999)). We begin with the statute's plain meaning. Id. We discern plain meaning from the ordinary meaning of the language, related provisions in the statute, and the statutory scheme as a whole. Id. (citing Dep't of Ecology, 146 Wn.2d at 11). A statute is unambiguous where the plain language is susceptible to only one reasonable reading. J.P., 149 Wn.2d at 450 (citing State v. Wilson, 125 Wn.2d 212, 217, 883 P.2d 320 (1994)). We do not accord deference to an agency's interpretation of an unambiguous statute. Edelman v. State ex rel. Public Disclosure Com'n, 152 Wn.2d 584, 590, 99 P.3d 386 (2004).

Under the 1988 family care act, RCW 49.12.265-295, when an employer provides paid time off for an employee's own use, the employee may use that leave to care for an eligible family member. RCW 49.12.270. If more than one type of paid time off is available, the employee may choose which type of "sick leave or other paid time off" to use for family care:

> If, under the terms of a collective bargaining agreement or employer policy applicable to an employee, the employee is entitled to sick leave or other paid time off, then <u>an employer shall allow an employee to use any or all of the employee's choice of sick leave or other paid time off</u> to care for ... [an eligible family member].

RCW 49.12.270(1) (emphasis added).

In 2002, the legislature defined "[s]ick leave or other paid time off" as "time allowed ... to an employee for illness, vacation, and personal holiday." Former RCW 49.12.265(5) (2002). As part of a 2005 amendment, the legislature added a second sentence to this definition. The second sentence adds self-funded disability plans to the definition of "'sick leave or other paid time off'" when an employer does not allow paid time off "for illness." RCW 49.12.265(5). As amended, the definition statute provides that:

> [1]"'Sick leave or other paid time off'" means time allowed</u> under the terms of an appropriate state law, collective bargaining agreement, or employer policy, as applicable, <u>to an employee for illness, vacation, and personal holiday.</u> [2] <u>If paid time is not allowed to an employee for illness, "sick leave or other paid time off" also means time allowed</u> under the terms of an appropriate state law, collective bargaining agreement, or employer policy, as applicable, <u>to an employee for disability</u> under a plan, fund, program, or practice that is: (a) Not covered by the employee retirement income security act of 1974, 29 U.S.C. Sec. 1001 et seq.; and (b) not established or maintained through the purchase of insurance.

RCW 49.12.265(5) (emphasis added).

The definition statute refers to time "allowed" or "not allowed" to an employee "for illness" in the first and the second sentences, respectively. The parties agree that the term "for illness" has the same meaning in both sentences. But because they disagree on what that meaning is, they dispute when the second sentence applies.

Honeycutt asserts that time allowed "for illness" is paid time off specifically for the purpose of illness. She contends that the first sentence of the statute lists three categories of paid leave: time allowed for illness, time allowed for vacation, and time allowed for personal holiday. According to Honeycutt, because the second sentence expressly refers to only one of these categories, time allowed for illness, the second sentence applies when that category of leave is not available. Under this reading, the FCA's provision concerning disability plans applies when an employer does not provide paid leave specifically for the purpose of illness, i.e., sick leave. [3]

The Department and Phillips 66 assert that any type of leave employees may access when they miss work due to illness is paid time off "for illness." They contend that in referring to paid time off for "illness, vacation, and personal holiday," the first sentence of the definition statute lists three interchangeable examples of types of time off that may be used "for illness." Under this reading, the second sentence of the statute only applies if disability is the only type of leave employees may use when they miss work due to illness. In this case, because employees may use vacation days or personal holidays when they are ill, the Department and Phillips 66 contend that the FCA's provision concerning disability plans does not apply.

We agree with Honeycutt. By the plain language of the statute, the FCA reaches three categories of paid time off: time off for illness, time off for vacation,

---

[3] Friends of the court Legal Voice, Economic Opportunity Institute, and Washington State Labor Council, AFL-CIO support this interpretation in their joint brief.

and time off for personal holiday. The second sentence of RCW 49.12.265(5) applies when an employer does not provide one of these listed categories, paid time off for illness.

To argue against this result, the Department and Phillips 66 focus on the word "allowed" in the statutory definition. But they misconstrue the word's meaning in the context of the statute. They argue that the ordinary meaning of "allow" is "permit," which indicates permission or discretion. The Department contends that by using the word "allowed" the statute signals that the proper inquiry is whether an employer permits employees to use paid personal or vacation time for the purpose of illness. The Department relies on Webster's Dictionary, which lists "permit" as one definition of "allow." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 58 (2002). This reliance is misplaced.

The statute defines "'sick leave or other paid time off'" as "'time allowed under the terms of an appropriate state law, collective bargaining agreement, or employer policy, as applicable, to an employee for illness, vacation, and personal holiday.'" RCW 49.12.265(5). In this context, "allowed" does not indicate discretion. Paid time off for the specific listed purposes is a benefit that the employee receives as a matter of right pursuant to an agreement, law, or policy. This meaning is emphasized in RCW 49.12.270, which states that an employee may use his or her choice of any sick leave or other paid time off to which the employee is "entitled."

As used in the statute, "allow" has the second meaning listed by Webster's: "to give or recognize as a right ... to give or assign as a share or

8

suitable amount (as of time or money) to a particular person or for a particular purpose." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 58 (2002). Applying this meaning to the statute, paid time "allowed ... to an employee for illness" is paid time off granted under an agreement or policy for absences from work due to illness. The provision for reaching disability plans applies "[i]f paid time is not allowed to an employee for illness." RCW 49.12.265(5).

We conclude that RCW 49.12.265(5) is not reasonably susceptible to the interpretation proposed by the Department. The provision for reaching disability plans in the second sentence of the statute unambiguously applies if an employer does not provide paid time off for the purpose of illness, commonly referred to as sick leave.

But even if the statute is ambiguous, legislative history compels the same conclusion. When a statute is ambiguous, we consider "other indicia of legislative intent," including legislative history, to resolve the ambiguity. Bostain v. Food Express, Inc., 159 Wn.2d 700, 708, 153 P.3d 846 (2007). We may consider sequential versions of a bill as indicia of legislative intent. Lewis v. Dep't of Licensing, 157 Wn.2d 446, 470, 139 P.3d 1078 (2006) (citing State v. Martin, 94 Wn.2d 1, 19, 614 P.2d 164 (1980)). We accord deference to an agency interpretation of an ambiguous statute that is within the agency's area of expertise. Bostain, 159 Wn.2d at 716. But we accord no deference to an interpretation that is inconsistent with a statutory mandate. Id. at 716-17 (citing Cockle v. Dep't of Labor & Indus., 142 Wn.2d 801, 812, 16 P.3d 583 (2001)).

9

The legislature considered four successive versions of the 2005 amendment to RCW 49.12.265(5). S.B. 5850, 59th Leg., Reg. Sess. (Wash. 2005); SUBSTITUTE S.B. 5850, 59th Leg., Reg. Sess. (Wash. 2005); SUBSTITUTE S.B. 5850 HOUSE COMM AMD, 59th Leg., Reg. Sess. (Wash. 2005); SUBSTITUTE S.B. 5850 HOUSE AMD, 59th Leg., Reg. Sess. (Wash. 2005). The text of each version, comments to the text, and the Senate and House Bill Reports all indicate the intent to reach self-funded disability plans when an employer does not provide sick leave.

The Senate Bill Report for S.B. 5850 summarizes the proposed legislation by stating that "[t]he definition of 'sick leave or other paid time off' must include any self-administered short-term or long-term disability plan unless the employer maintains a separate paid sick leave plan or practice." S.B. Rep. on S.B. 5850, 59th Leg., Reg. Sess. (Wash. 2005). The report includes testimony explaining that:

> [f]or a number of employees, their principal sick leave plan is called a disability plan and as a result some employers will not allow employees to use accrued time under the disability plan to care for a sick child or family member. . . . Some employers call their sick leave plan a disability plan and are able to avoid the intent of the family care act and this bill would not allow them to do that anymore.

Id. The next version of the bill, Substitute Senate Bill 5850, states that "sick leave or other paid time off" includes self-administered disability plans unless the employer maintains a separate 'bona fide paid sick leave policy'. . . ." SUBSTITUTE S.B. 5850, 59th Leg., Reg. Sess. (Wash. 2005). The Senate Bill Report for this

version includes the same summary and testimony as the previous report. S.B. REP. on SUBSTITUTE S.B. 5850, 59th Leg., Reg. Sess. (Wash. 2005).

The first House amendment states that the FCA reaches a disability plan "[i]f paid time is not allowed to an employee for illness . . . ." SUBSTITUTE S.B. 5850, HOUSE COMM AMD, 59th Leg., Reg. Sess. (Wash. 2005). The amendment expressly excludes disability plans governed by ERISA but does not address disability plans maintained through insurance. Id. The House Bill Report for this version states that the amended bill differs from the substitute bill in that it modifies the definition of "sick leave or other paid time off" to include "time allowed . . . to an employee for disability" under a non-ERISA disability plan "if the employee does not have paid sick leave. . . ." H.B. REP. on SUBSTITUTE S.B. 5850 HOUSE COMM AMD, 59th Leg., Reg. Sess. (Wash. 2005).

The final, successful, version of the bill was proposed as a House floor amendment. SUBSTITUTE S.B. 5850 H AMD, 59th Leg., Reg. Sess. (Wash. 2005). The text of the proposed legislation includes a comment stating that the amendment "[c]larifies that, if an employee does not have paid sick leave, the employee may use disability leave" provided the disability leave is not governed by ERISA or maintained through insurance. Id. In addition, the Senate Bill Report summarizes the House amendments. S.B. REP. ON S.S.B. 5850, 59th Leg., Reg. Sess. (Wash. 2005). The report states that both House amendments "clarify that if an employee does not have paid sick leave, the employee may use disability leave not covered by ERISA to care for ill family members." Id.

11

The Department argues that by rejecting Substitute S.B. 5850, which specified that the FCA reached disability plans unless the employer maintained a "bona fide paid sick leave policy," the legislature declined to link sick leave and disability benefits and demonstrated an intent to only reach disability benefits when an employee has no other paid leave. This argument is without merit. The legislative history consistently demonstrates the intent to include self-funded disability plans in the definition of "sick leave or other paid time off" when an employer offers such a plan instead of sick leave.

Phillips 66 next relies on the legislature's statement of findings. In passing the 1988 FCA, the legislature stated that it was "in the public interest for employers to accommodate employees by providing reasonable leaves from work for family reasons." Legislative Findings–1988, c 236 § 1. Phillips 66 focuses on the word "reasonable." Phillips 66 Brief at 16, 29-30. The company asserts that its STD plan provides up to 52 weeks of paid leave and argues that it is not reasonable to allow employees to access these benefits to care for an ill family member while saving their vacation time. We reject this argument. The legislature created a statutory definition for leaves that are within the FCA. The FCA does not authorize the Department to analyze leave policies on a case by case basis for reasonableness.

Finally, the Department argues that its regulations properly explain that the statute only reaches disability plans if an employee is prohibited from using other leave for illness. The Department promulgated regulations interpreting the FCA. Chapter 296-130 WAC. The regulations affirm an employee's right to use

his or her choice of "sick leave or other paid time off" to care for an eligible family member. WAC 296-130-030(1). A note following WAC 296-130-030 explains that many employers combine categories of paid leave such as sick leave and vacation leave into one pool described as "'paid time off'" or PTO. WAC 296-130-030. The Note states that the practice of providing PTO is consistent with the intent for employees to use their choice of leave. Id. The Department concedes that Phillips 66 does not offer PTO, but argues that the company's policy of allowing employees to use vacation time for illness is similar to a PTO plan. We reject this argument.

In a PTO, all of an employee's paid time off is available in one pool for the employee's own use. An employee may access any or all of this time off under the FCA. Phillips 66's practice of providing benefits under an STD plan, but restricting these benefits to an employee's own illness, is not analogous. As the Department's Note goes on to explain, the key to compliance with the FCA is that any leave available for an employee's own health condition be available on the same terms to care for sick family member. WAC 296-130-030.

The Department also relies on the regulatory definition of "sick leave or other paid time off." The Department's rule states that an eligible disability plan is within the FCA "[i]f paid time is not allowed to an employee for illness with a sick leave or pay benefit. . . ." WAC 296-130-020(8) (emphasis added). The Department argues that Phillips 66 provides a "pay benefit" for illness by allowing employees to access paid vacation time when they are sick. This argument is without merit. While it is unclear what the term "pay benefit" encompasses, the

regulation includes the same use of "allow" as the statute. As in the statute, paid time off for illness refers to paid leave granted under the terms of an agreement for the purpose of illness. To the extent the Department's regulation propounds any other interpretation, we reject that interpretation as inconsistent with the statutory mandate. Bostain, 159 Wn.2d at 716-17 (citing Cockle, 142 Wn.2d at 812).

The Department erred in ruling that the FCA only reaches a disability plan if that plan is the only means by which an employee may be compensated for time off due to illness. By its plain language, RCW 49.12.265(5) is not susceptible to the interpretation propounded by the Department. But even if ambiguous, legislative history clearly indicates the intent to reach eligible disability plans when an employer does not provide sick leave.

Because Phillips 66 does not provide sick leave, the FCA's provision for reaching disability plans applies. The next issue is whether Phillips 66's STD plan is exempt from the FCA because it is governed by ERISA or maintained through insurance. The Department made no findings on this issue.

When an agency has not ruled on a relevant factual issue, we do not substitute our judgment for that of the agency by deciding the issue. Suquamish Tribe v. Central Puget Sound Growth Mgmt. Hearings Bd., 156 Wn. App. 743, 778, 235 P.3d 812 (2010). Rather, we remand to the agency for a determination. Id. We may, however, substitute our judgment for that of the agency on purely legal issues that are not with the primary jurisdiction of the agency. Id. at 778-79.

Honeycutt urges this court to rule that Phillips 66's STD plan is within the FCA because it is not governed by ERISA or maintained by insurance. But because the ruling on this issue requires determinations of fact, we remand to the Department.

Reversed and remanded.

_Spearman, J._

WE CONCUR:

_Trickey, A.C.J._

_Schindler, J._