IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34153-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LANCE THEOPOLIS SMITH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — As Richland Police Officer Drew Florence assisted in restraining

Lance Smith, Smith reared his head and struck Florence, under Florence's eye, with his

head. From a conviction for third degree assault, Smith appeals and contends the State

lacked sufficient evidence to convict him because the evidence did not prove he intended

to assault the officer. We disagree and affirm Smith's conviction.

## FACTS

The prosecution of Lance Smith arises from his reaction to arrest on July 16, 2014.

On the morning of July 16, Darryl Smith, Lance Smith's father, noticed his vehicle

missing and phoned the Richland Police Department to report the car stolen. Darryl

Smith suspected one of his children appropriated the vehicle. In the early afternoon of the same day, Lance Smith returned his father's vehicle to the father's apartment and immediately departed the residence on foot. Darryl Smith notified the police department that his son returned the vehicle. In addition, he informed the police that his son acted aggressively and Darryl's mother, Lance Smith's grandmother, left the apartment because of concern for her safety.

Richland Police Officer Joe Brazeau responded to Darryl Smith's second call. Dispatch informed Officer Brazeau that Lance Smith returned a stolen vehicle to his father's house and was causing a disturbance at the home. Dispatch also relayed that Smith recently left his father's home and walked westbound on Columbia Park Trail.

Officer Joe Brazeau located Smith in the parking lot of Kimo's Restaurant. He asked Smith questions about his father's vehicle and the disturbance at the house. Smith grew agitated. Smith stared at Brazeau, leaned toward Brazeau, flexed his muscles, and answered questions in a loud voice. Brazeau announced to Smith that he was being detained. Smith yelled that he (Smith) was detained. Smith repeatedly talked nonsensically. He asked Brazeau if he was a king or had a vagina.

Kennewick Police Officers Rebecca Jones and Josh Sullivan arrived shortly to assist Officer Joe Brazeau. On the arrival of police assistance, Lance Smith's aggressive behavior progressively worsened. Smith lost self-control. Dispatch informed Officer Brazeau that probable cause supported an arrest of Smith for taking his father's vehicle.

2

Brazeau recognized the futility of further dialogue with Smith. Accordingly, Brazeau arrested Smith for stealing his father's vehicle. Brazeau grabbed Smith's wrist to handcuff him, but Smith spun in an attempt to break contact. Smith disobeyed all of Brazeau's verbal commands. Officers Jones and Sullivan assisted Brazeau in taking Smith to the ground. Smith resisted by fighting and swinging to escape from Brazeau's grip. Brazeau performed several knee strikes to Smith's lower back and buttocks to gain control. Eventually, the officers handcuffed Smith.

Meanwhile, Richland Police Officers Jason Crouch and Drew Florence reported to the scene. The group of officers lifted Smith from the ground. Officer Crouch frisked Lance Smith for weapons and contraband. Crouch held Smith's right arm while searching the right side of his body. Officer Florence approached Smith from an angle to assist Crouch. As Florence stepped toward Smith, Smith reared and swung his head and hit Florence underneath the eye with his forehead. Smith inflicted no permanent damage, but Florence's face swelled and temporarily turned red.

After seeing Lance Smith head butt Officer Drew Florence, Officer Jason Crouch grabbed Smith by the hair and pushed him onto the patrol car. The officers soon recognized the high heat in the patrol car, so they relocated Smith to the pavement after placing a sweatshirt underneath him. Crouch then placed a pair of hobble restraints on Smith, which restricted the movement of his feet. The officers lifted Smith off the

3

ground and transferred him to the inside of the now cooler patrol car. Officer Joe

Brazeau transported Smith to Kadlec Regional Medical Center for medical evaluation.

Richland Officer Jason Crouch later spoke with Darryl Smith, Lance Smith's

father, about the stolen vehicle. Darryl Smith indicated that he did not wish his son

prosecuted for taking the vehicle.

## PROCEDURE

The State of Washington charged Lance Smith with assault in the third degree.

The trial court repeatedly continued trial dates due to concerns about Smith's competency

to stand trial. The State requested, and the trial court granted, requests for competency

examinations at Eastern State Hospital. Dr. Nathan Henry, a licensed psychologist,

initially evaluated Smith and diagnosed him with bipolar disorder, manic and psychotic

features. Dr. Henry informed the court that Smith lacked the capacity to understand the

legal proceedings against him or participate in his own defense. Smith's last evaluation,

by licensed psychologist Dr. C. O'Donnell on December 21, 2015, showed no presence

of mental health symptoms and concluded that Smith possessed sufficient ability to

consult with his lawyer in the criminal proceedings. The trial court found Smith

competent to stand trial.

Lance Smith's jury trial commenced on February 1, 2016. At the proceeding,

Lance Smith wore makeup on his face resembling the Joker, the fictional supervillain

character featured in *Batman* comic books. The State called six witnesses: Darryl Smith

4

and police officers Joe Brazeau, Rebecca Jones, Josh Sullivan, Jason Crouch, and Drew Florence.

This appeal requires a review of each police officer's testimony regarding the physical contact between Officer Drew Florence and appellant Lance Smith. Richland Police Officer Joe Brazeau described that, during Officer Jason Crouch's frisk of Smith, "at some point Mr. Smith basically leapt up, swung his head, and struck Officer Florence in the face." Report of Proceedings (RP) at 64. Kennewick Police Officer Rebecca Jones testified that she observed Smith "abruptly [thrust] his upper body into the air and in kind of like a backwards motion (indicating)." RP at 84. Kennewick Police Officer Josh Sullivan averred that, as he checked Smith's handcuffs, he saw Smith tense and jump. Sullivan characterized the jump as "a mule kick, what we would have done in gym as kids." RP at 99. Officer Sullivan did not see Smith's head strike Florence because Sullivan focused his sight on Smith's legs.

Richland Police Officer Jason Crouch testified to witnessing Lance Smith strike Richland Police Officer Drew Florence with his head. Crouch acknowledged that Smith squirmed during the search incident to arrest. Crouch declared that "Officer Florence came in to assist, and as Officer Florence leaned in to help Mr. Smith head butted Officer Florence on the face." RP at 110. He added that he "actually saw [Smith] lunge forward and strike Officer Florence in the head with his forehead." RP at 118.

The alleged victim, Richland Police Officer Drew Florence, testified:

5

Q. Okay. So, as you got out of your car where did you go?

A. I walked over to where the other officers were, and there were several of 'em standing around near another patrol vehicle.

Q. Did you say anything to anyone or did you just start helpin' out?

A. No. I was just kind of, you know, tryin' to figure out something that needed to be done. I saw that Officer Crouch was tryin' to search a male subject, the one who was handcuffed, and he was tryin' to kind of hold on to his right arm at the [same] time as trying to search him. So, I went to go and kind of take control of the male's arm so I could focus on searching him for weapons and things of that nature.

Q. What happened when you reached out to grab his arm?

A. So, I was about three feet away, and as I went to step towards him he kind of reared up and with his head using a swinging motion struck me underneath my eye (indicating) with his forehead (indicating).

Q. You were approaching from the front?

A. Yeah. Kind of—yes, the front, but also off to the side. Kind of at an angle.

. . . .

Q. When you say he swung, what do you mean?

A. Well, he just kind of used his head and neck in a swinging motion (indicating) and kind of threw his body weight forward is I guess how I would describe it. Kind of lurched forward.

RP at 129-30.

In further testimony, Officer Drew Florence recalled events transpiring quickly, but remembered Smith moving toward him. Florence said "I saw him coming at me, but when he hit me—it doesn't happen every day. So, it just took me a second to kind of figure out what happened." RP at 137. Officer Florence also recounted a conversation he overheard at Kadlec Regional Medical Center between Smith and one of Smith's treating physicians. In response to a question from the physician regarding what occurred, Florence heard Smith reply: "he had 'head butted a police officer' and that he

6

probably shouldn't have done that." RP at 132.

Lance Smith testified in his defense. Smith asserted that he did not intentionally strike Officer Drew Florence. He said that he "got spooked and it just like bumped him right under the eye." RP at 152. Smith explained that "[o]ne of the cops goes, 'Did he just head butt you?' and I look at him like, 'No, guys.' He goes, 'Yeah, I think he head butted me,' and they go, 'Oh, you're goin' down,' and they said something like that." RP at 153. He claimed that he did not hear Officer Florence approaching him. "I just looked over and his face was right there (indicating)—and I just went like that (indicating)—and literally his face was right here (indicating)." RP at 156. Smith clarified Florence's account of the conversation that transpired with him and his doctor at Kadlec Regional Medical Center. Smith remembered telling the doctor that "[s]ome cop told me I head butted [one of the police officers]. I didn't, and they just beat the crap out of me." RP at 158.

The trial court instructed the jury that, in order to convict Lance Smith, it must find beyond a reasonable doubt that (1) on or about July 16, 2014, Smith assaulted Drew Florence, (2) at the time of the assault, Officer Florence was a law enforcement officer or other employee of a law enforcement agency who was performing his official duties, and (3) that any of these acts occurred in the State of Washington. A jury instruction defined "assault" as:

7

> An assault is an intentional touching or striking of another
> person, with unlawful force, that is harmful or offensive regardless of
> whether any injury is done to the person. A touching or striking is
> offensive if the touching or striking would offend an ordinary person
> who is not unduly sensitive.

Clerk's Papers (CP) at 181. Another instruction declared: "[a] person acts with intent or

intentionally when acting with the objective or purpose to accomplish a result that

constitutes a crime." CP at 182.

The jury found Lance Smith guilty of assaulting Officer Drew Florence. The trial

court sentenced Smith to three months' confinement and up to twelve months of

community custody.

## LAW AND ANALYSIS

The sole issue on appeal is whether the State presented sufficient evidence from

which the jury could infer that Lance Smith acted with intent when he assaulted Officer

Drew Florence. We conclude that the State presented sufficient evidence.

We review familiar principles of sufficiency of evidence. Evidence suffices to

convict, if, after viewing it in the light most favorable to the State, a rational trier of fact

could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94

Wn.2d 216, 221-22, 616 P.2d 628 (1980). A defendant challenging sufficiency of the

evidence at trial admits the truth of the State's evidence and all reasonable inferences

therefrom. *State v. Witherspoon*, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). This court

defers to the fact finder's credibility determinations and determinations of the

8

No. 34153-4-III
*State v. Smith*

persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970

(2004).

> RCW 9A.36.031 creates the crime of third degree assault. The statute reads:

> > (1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree: . . . (g) Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.

Lance Smith did not contest he made physical contact with a law enforcement officer.

Therefore, in order to convict Lance Smith of assault in the third degree, the jury needed

to find that the State proved beyond a reasonable doubt that Smith intended to assault

Officer Drew Florence. *State v. Brown*, 140 Wn.2d 456, 467-68, 998 P.2d 321 (2000).

A person acts with intent when he or she acts with the objective or purpose to

accomplish a result constituting a crime. RCW 9A.08.010(1)(a). The trial court properly

instructed the jury that "[a] person acts with intent or intentionally when acting with the

objective or purpose to accomplish a result that constitutes a crime." CP at 182. Intent

"can be inferred as a logical probability from all the facts and circumstances." *State v.*

*Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994). A jury may infer that a defendant

acted with intent even without direct evidence. *State v. Bea*, 162 Wn. App. 570, 579, 254

P.3d 948 (2011).

> A jury may infer criminal intent from a defendant's conduct where it is plainly indicated as a matter of logical probability. This includes

9

inferring or permissibly presuming that a defendant intends the natural and probable consequences of his or her acts.

*State v. Bea*, 162 Wn. App. at 579 (citations omitted).

Lance Smith argues that the State's evidence only shows he struck Officer Drew Florence in the face and not that his conduct was intentional. He further argues that the jury did not rely on facts or inferences from the facts, but rather speculated that he acted intentionally. We disagree. While Smith testified that the contact was accidental and he did not head butt Officer Florence intentionally, the jury held the prerogative to determine the credibility of his testimony. The jury was entitled to discredit Smith's account and credit the evidence in favor of the State. Despite the State's failure to directly question its witnesses regarding intentionality, the evidence presented, viewed in favor of the State, is sufficient to establish intent. Intent may be drawn from an actor's conduct. *State v. Bea*, 162 Wn. App. at 579 (2011). The State likely could present no direct evidence of intent, since a witness may not testify to another's state of mind. *Perry v. Brakefield*, 534 So. 2d 602, 608 (Ala. 1998); *Combs v. Fantastic Homes, Inc.*, 584 S.W.2d 340, 344 (Tex. Civ. App. 1979); *Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex. Civ. App. 1977); *Taylor v. Roach*, 302 So. 2d 327, 331 (La. Ct. App. 1974); *Medina v. Sherrod*, 391 S.W.2d 66, 69 (Tex. Civ. App. 1965); *De Santis v. Massachusetts Bonding & Ins. Co.*, 289 Mass. 315, 194 N.E. 136, 139 (1935).

Each of the five police officers on scene described Lance Smith's body movements leading to Lance Smith's assault of Officer Drew Florence. Officer Rebecca Jones observed Smith abruptly thrust his upper body into the air. As Officer Josh Sullivan checked Smith's handcuffs, he saw Smith tense and jump, characterizing the jump as a mule kick. Officer Joe Brazeau testified that Smith leapt up, swung his head, and struck Officer Florence in the face. Officer Jason Crouch declared that Smith lunged forward and struck Officer Florence in the head with his forehead. Florence, the victim, told the jury that Smith reared and swung his head to strike Florence under the eye. Florence also relayed a conversation between Smith and his physician, during which Smith commented that he had head butted a police officer. From this evidence, a rational trier of fact could infer intent.

The State also provided evidence of Lance Smith's demeanor and actions toward the other police officers during the encounter that support a finding of intent. Officer Joe Brazeau, the first officer on the scene, described Smith as agitated and as exhibiting aggressive behavior on questioning. Smith's conduct progressively worsened. Brazeau detailed Smith's resistance to arrest and the difficulty involved in handcuffing Smith when he struggled to escape.

## CONCLUSION

We affirm Lance Smith's conviction for third degree assault.

11

No. 34153-4-III
*State v. Smith*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, J.