
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36411-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSHUA QUINTEN DAVIS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Joshua Davis contends his convictions for first degree assault and

unlawful possession of a firearm lacked sufficient evidence. Because ample evidence

supported both convictions, we affirm.

## FACTS

The facts come from trial testimony. Because Joshua Davis challenges the

sufficiency of evidence, we write the facts in a light favorable to the State. We thus focus

on testimony of the victim, Scott Stroud; a third party, Les DeVille; and law enforcement officers. We sometimes contrast this testimony with the testimony of Davis.

In December 2017, the defendant, Joshua Davis, lived in a trailer on Les DeVille's property near Loon Lake. The two men together visited a coffee shop in Loon Lake on December 9, 2017.

On December 9, Scott Stroud visited the same coffee shop. Scott Stroud encountered Les DeVille and Joshua Davis. Stroud had recently met Davis, but knew DeVille for one year. According to Stroud, Davis and DeVille asked Stroud if he wanted to hunt deer. Although hunting season had passed, Stroud agreed and asked to first retrieve warmer clothes at his house. DeVille responded that Stroud could wear some of his clothes and boots from his house.

The three journeyed to Les DeVille's house. According to DeVille, Davis and Stroud spoke about hunting during the ride. DeVille mentioned the presence of four large bucks on his land. Joshua Davis testified at trial that DeVille and he invited Stroud to join the two at DeVille's residence, but for the purpose of a barbecue, not for hunting.

On arrival at Les DeVille's property, Scott Stroud and Joshua Davis entered Davis's trailer. Davis retrieved coveralls for Stroud to wear. Davis also retrieved two shotguns from some undisclosed location. Stroud questioned Davis about the use of BB

2

shotguns for deer hunting because the typical hunter employs a BB shotgun only for bird

hunting. A large bullet would otherwise destroy the bird and render its meat unusable.

Davis replied that he possessed slugs for the shotguns. A slug is one piece of lead

compared to a BB's small spherical shape. Stroud contemplated to himself that a slug

would kill a deer.

According to Joshua Davis, while Scott Stroud and he searched for clothes in

Davis's trailer, Davis noticed Stroud snorting a line of an unidentified substance. Davis left

the trailer alone and walked to the river to smoke methamphetamine.

According to Scott Stroud, Stroud and Joshua Davis left Les DeVille's property

and ambled along a dirt road toward a meadow to hunt. Stroud saw a fence and heard

noises in the distance. Davis suggested they steer in a different direction due to concerns

of trespassing on someone's property. The two entered a deer trail.

In the meantime, Les DeVille began to prepare his barbeque. After entering his

home, he returned outside to place meat on the grill. He could not see Davis or Stroud,

could not hear voices, and did not know where the two went.

As Scott Stroud and Joshua Davis walked on the deer trail, Stroud strode in front of

Davis. As Stroud stepped over a log and ducked under a branch, he received a shot to the

back of the head. Stroud crumpled to the ground, momentarily lost consciousness, and

3

opened his eyes. He knew he had been shot. Stroud jumped to his feet and ran towards a highway. As he bolted, the shooter fired a second shot that struck Stroud in the back of the leg. Stroud reached the highway and hailed a passing motorist, who transported him to the Four Corners junction. According to Joshua Davis, he never followed Scott Stroud or shot Stroud.

Scott Stroud summoned emergency personnel at Four Corners, and the personnel transported Stroud to Spokane's Sacred Heart Medical Center. An emergency room physician examined and treated Stroud. X-rays confirmed gunshot wounds respectively to the skull and femur. The shooter shot with bird shot and not a slug. Stroud's head still housed some BBs at the time of trial.

Later on December 9, Scott Stroud met with Sergeant Gregory Gowin and Detective William Bitton of the Stevens County Sherriff's Office. Stroud claimed that Joshua Davis shot him. Stroud identified Joshua Davis from a photo lineup.

According to Joshua Davis, after smoking methamphetamine, he returned to Les DeVille's property. As Davis approached DeVille's driveway, he noticed police vehicles. Because he bore a methamphetamine pipe, Davis chose to bide his time and hide from law enforcement. Officers found Davis nonetheless.

According to Sergeant Gregory Gowin, after speaking with Scott Stroud, he traveled to Les DeVille's residence. Washington State Patrol Troopers Jeffrey Evers and Andrew Gillette joined Gowin at the home. While sitting in an unmarked patrol car, Andrew Gillette observed a large male walking slowly and looking into vehicles. Gillette saw the man crouch next to a collapsed building. Sergeant Gregory Gowin and Trooper Evers arrested the man, later identified as Joshua Davis.

During a search incident to arrest, Sergeant Gregory Gowin seized a methamphetamine pipe from Joshua Davis. Contents of the pipe later tested positive for methamphetamine. According to Gowin, Davis conceded speaking to Scott Stroud about hunting deer.

Law enforcement grabbed Joshua Davis's clothes to test them for evidence. Law enforcement found no blood splatter on the clothes. The clothes were never tested for gun powder residue. Officers accompanied Scott Stroud to the location of the shooting, but found no shotgun or shotgun shells perhaps due to one foot of snow on the ground.

Sergeant Gregory Gowin returned to Les DeVille's property in the days following the shooting to discuss firearms that DeVille possessed on his property. DeVille admitted to having two operable shotguns on his property. After the shooting, however, DeVille found the shotguns missing.

5

PROCEDURE

The State of Washington charged Joshua Davis with assault in the first degree with a firearm enhancement, unlawful possession of a firearm in the second degree, and unlawful possession of a controlled substance, methamphetamine. Before trial, Davis stipulated to an earlier felony conviction, an essential element of the unlawful possession of a firearm charge. During trial, Scott Stroud identified Davis as the person who shot him.

During trial, Joshua Davis testified. He denied shooting Scott Stroud and denied possessing a shotgun on December 9, 2017. Davis also denied talking to Stroud about hunting.

The jury found Joshua Davis guilty on all three charges. The jury answered yes to the special verdict question of whether Davis was armed with a firearm at the time he assaulted Scott Stroud.

LAW AND ANALYSIS

On appeal, Joshua Davis challenges the sufficiency of evidence for the convictions of first degree assault and unlawful possession of a firearm. He does not challenge his conviction for possession of a controlled substance.

6

Assault

Joshua Davis contends the State presented insufficient evidence to prove all elements of first degree assault. To convict Joshua Davis of assault in the first degree, the State must prove (1) the defendant assaulted another person, (2) the defendant committed the assault with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death, and (3) the defendant acted with intent to inflict great bodily harm. RCW 9A.36.011(1)(a). Davis argues that the State presented insufficient evidence to prove he shot Scott Stroud or to prove he intended to inflict great bodily harm. We address these contentions in such order.

The test for determining if the State presents sufficient evidence is whether, after viewing the evidence in the light most favorable to the State, any rational jury could find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted strongly against the defendant. *State v. Salinas*, 119 Wn.2d at 201. A claim of insufficiency admits the truth of the State's evidence and all inferences reasonably drawn therefrom. *State v. Salinas*, 119 Wn.2d at 201. Circumstantial evidence is as reliable as direct evidence. *State v. Johnson*, 159 Wn. App. 766, 774, 247 P.3d 11 (2011). This court must defer to the trier

7

of fact who resolves conflicting testimony, weighs the evidence, and draws reasonable inferences from the testimony. *State v. Lawson*, 37 Wn. App. 539, 543, 681 P.2d 867 (1984).

Joshua Davis first argues that the State presented insufficient evidence to find that Davis assaulted Scott Stroud because Stroud did not see his shooter and the law enforcement investigation revealed no physical evidence that a shooter fired a shotgun. Davis highlights that no third party saw the shooting and Stroud testified the bullet came from behind.

With his contention, Joshua Davis asks this court to discount the testimony of Scott Stroud that Davis shot him. Davis fails to recognize the implication of his argument that a fact, to which only one person testifies, does not support the existence of that fact. Conversely, Davis was the sole witness who testified he could not have shot Stroud because he was smoking drugs elsewhere on Les DeVille's property. Although Stroud did not see Davis shoot him, Stroud testified that the shots came from the location where Davis stood, no one else was present, and the BBs found in his body could come from the shotgun that Davis possessed while hunting.

Joshua Davis further argues that he established a credible alibi because he openly admitted, during his testimony, to smoking methamphetamine during the time of the

shooting. Davis implies that his admission of a crime renders him a more credible witness than the other eyewitness, Scott Stroud. Nevertheless, Stroud also implicated himself when testifying. Stroud admitted to snorting Suboxone, unlawfully possessing a firearm, and unlawfully hunting without a license and out of season. Regardless, this court's role does not include resolving questions of credibility between witnesses.

In support of his challenge to the sufficiency of evidence, Joshua Davis also claims that Les DeVille testified that neither Davis nor Stroud left DeVille's property after arriving for the barbecue. DeVille's testimony actually conflicts with Davis's contention. DeVille testified that, when he returned outside to deposit meat on the grill, the two had vanished.

Joshua Davis next contends that Les DeVille possessed no functioning shotguns on his property on December 9, 2017. Nevertheless, Sergeant Gregory Gowin testified that DeVille told Gowin he maintained two working shotguns on his property during this time.

An assault is an intentional shooting of another person that is harmful or offensive. After viewing the evidence in the light most favorable to the State, and drawing reasonable inferences in favor of the State, we conclude that sufficient evidence existed for a rational trier of fact to find Joshua Davis committed an assault with a firearm.

Intent to Assault

Joshua Davis next argues that the State presented insufficient evidence to find the

requisite intent for first degree assault.  A person is guilty of assault in the first degree if

he or she, with the intent to inflict great bodily harm, assaults another with a firearm,

administers poison to another, or assaults another person and causes great bodily harm.

RCW 9A.36.011(1).  The mens rea for this crime is the intent to inflict great bodily harm.

*State v. Wilson*, 125 Wn.2d 212, 218, 883 P.2d 320 (1994).  RCW 9A.04.110(4)(c)

defines "[g]reat bodily harm" as "bodily injury which creates a probability of death, or

which causes significant serious permanent disfigurement, or which causes a significant

permanent loss or impairment of the function of any bodily part or organ."

Joshua Davis contends that, even if he shot Scott Stroud while the two men were

hunting, the evidence in this case does not establish that Davis acted with the intent to

inflict great bodily injury.  According to Davis, any shooting could be explained by an

accidental misfire.

We fault Joshua Davis's argument because, despite testifying at trial, he never

averred that he shot Scott Stroud by mistake.  Davis denied all allegations that he even

spoke to Stroud about hunting deer.  Davis testified that he never spoke about hunting

10

because he cannot lawfully be near a gun.  Because of his complete denials, a rational jury could conclude that none of his testimony or theories of defense held credibility.

Joshua Davis contends that a knowledgeable hunter, such as he, would never substitute bird shot for a slug if he intended to inflict great bodily harm on a person. Nevertheless, trial testimony only established that Stroud, not Davis, was a knowledgeable hunter.

The jury might question why the shooter loaded the shotgun with birdshot as opposed to lead slugs.  But the jury could also wonder how someone accidentally shot another twice, not only once.  Joshua Davis's theory that he accidently fired his gun is belied by the evidence of two shots, one in the head and one when the victim ran away. Hunting "accidents" do not result in two gunshot wounds.

Finally, one may seek to inflict great bodily harm with bird shot from a shotgun. Scott Stroud's escape with minimal injury bears nothing on Joshua Davis's intent.

Possession of a Firearm

We now review Joshua Davis's argument that the State presented insufficient evidence to prove beyond a reasonable doubt that he possessed a firearm on December 9, 2017.  We will not repeat the principles of law we apply when addressing the sufficiency of evidence.

11

A person is guilty of second degree unlawful possession of a firearm if that person (1) knowingly had a firearm in his possession, and (2) had previously been convicted of a felony. RCW 9.41.040(2)(a)(i). Joshua Davis does not dispute that he garnered an earlier felony conviction. He argues, though, that, because the State failed to produce the shotgun or other physical evidence, the State presented insufficient evidence to find Davis possessed a firearm on December 9, 2017.

We reject this contention also. The evidence at trial, construed most strongly in the State's favor, sufficiently supported a finding that Joshua Davis unlawfully possessed a firearm.

Although circumstantial evidence may convict, the State presented ample direct evidence of Joshua Davis's possession of a firearm. Scott Stroud testified that Joshua Davis retrieved two shotguns. Stroud testified that both he and Davis possessed the shotguns when hunting. Although officers did not recover any firearm or expelled shells, medical testimony corroborated that someone shot Stroud with a firearm. Sergeant Gowin testified that Les DeVille indicated he had working shotguns on his property, but that DeVille could not locate the firearms days later.

## CONCLUSION

We affirm Joshua Davis's convictions for first degree assault and unlawful

No. 36411-9-III
*State v. Davis*

possession of a firearm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Siddoway, J.

13