14 P.3d 884 (2000)
STATE of Washington, Respondent,
v.
Robbie L. HALL, Appellant.
No. 18060-3-III.
Court of Appeals of Washington, Division 3, Panel Eight.
December 28, 2000.
*885 Karen R. Baker, Seattle, for Appellant.
*886 James A. Hershey, Deputy Prosecuting Atty., Wenatchee, for Respondent.
Bruce L. Brown, Kent, for amicus curiae.
BROWN, J.
A jury convicted Robbie L. Hall of three counts of third degree assault on law enforcement officers. Mr. Hall appeals, alleging four instructional errors: (1) refusal to give a voluntary intoxication instruction; (2) refusal to include intent in the to convict instructions; (3) refusal to give an attempted assault instruction; and (4) refusal to instruct the jury that the defendant's knowledge that the victim is a law enforcement officer is an element of third degree assault. We affirm.

FACTS
As background, Chelan County Sheriff's Deputy Josh Mathena arrested Mr. Hall near Chelan for an unrelated matter. The critical events here reportedly arose during Mr. Hall's disruptive and self-destructive behavior while en route to jail in Wenatchee. Ultimately, the State charged three third degree assaults with Deputy Mathena, Deputy Marcus Harris, and City of Chelan Police Officer Steve Groseclose as victims.
Mr. Hall "began acting up, screaming, yelling" and began to bang his head against the plexiglass directly behind Deputy Mathena. Deputy Mathena radioed Deputy Harris for assistance. When Deputy Harris arrived, he tried without success to persuade Mr. Hall to calm down. The two deputies then tried to restrain Mr. Hall. As Deputy Mathena reached across the passenger compartment, Mr. Hall jumped up and tried to bite the deputy's hand. Deputy Mathena jerked his hand back but not before Mr. Hall inflicted a small abrasion on one of his fingers. While partially restrained, Mr. Hall then twice tried to head butt Deputy Harris. According to Deputy Mathena, Deputy Hall "barely" avoided both attempts. Officer Groseclose then arrived and helped the two deputies put Mr. Hall in leg restraints. Mr. Hall attempted to spit on Officer Groseclose. The officer stepped back "to avoid the majority of it." Officer Groseclose said getting spat on raised concerns regarding the possibility of contamination.
Psychologist, Mark Mays, Ph.D., the sole defense witness, testified that Mr. Hall suffered from a personality disorder at the time of the assault that impaired his ability to control his anger and impulses. According to Dr. Mays, Mr. Hall's condition resulted in a type of paranoia toward law enforcement authorities that escalated in stressful situations. It was Dr. Mays's opinion that Mr. Hall lacked the capacity to form intent to commit the charged assaults. Dr. Mays opined Mr. Hall "lost control as a result of his psychological difficulties." Dr. Mays further stated that Mr. Hall's "mental disorder would be amplified and made even worse by alcohol." "I think it would be harder for him if intoxicated, even mildly intoxicated, to exert thinking control over his behavior ."
In rebuttal, psychiatrist Dr. Vernon Cressy disputed that Mr. Hall had a major personality disorder. Instead, Dr. Cressy opined that Mr. Hall had the capacity to form intent to assault the officers. Psychologist, Timm Fredrickson, Ph.D., testified Dr. Mays's report was not inconsistent with his own earlier assessment that Mr. Hall was free of mental disorder. In Dr. Fredrickson's opinion, Mr. Hall showed some "antisocial personality traits" but otherwise did not have "a full-blown antisocial personality disorder." Dr. Fredrickson also believed that Mr. Hall had the capacity to form intent to assault the officers. Deputy Mathena's and Deputy Harris's testimony indicated Mr. Hall was not intoxicated but did smell of alcohol.
The trial court did not give Mr. Hall's requested instruction on voluntary intoxication, reasoning insufficient evidence of intoxication existed. The trial court also rejected Mr. Hall's proposed instructions on "attempted" third degree assault, reasoning no such crime existed because the third degree assault statute encompassed attempted physical contact. Mr. Hall also excepted to the trial court's to convict instruction, which did not include intent as a specific element.
After guilty verdicts on all three counts and sentencing, Mr. Hall filed this appeal. This court stayed the matter pending the *887 Supreme Court's opinion in State v. Brown, 140 Wash.2d 456, 998 P.2d 321 (2000).

ANALYSIS

A. Voluntary Intoxication
The issue is whether the trial court erred by abusing its discretion when rejecting Mr. Hall's proposed instruction on voluntary intoxication on the ground that the evidence was insufficient to support giving it.
This court reviews a trial court's decision to reject a jury instruction for abuse of discretion. State v. Picard, 90 Wash.App. 890, 902, 954 P.2d 336, review denied, 136 Wash.2d 1021, 969 P.2d 1065 (1998). The abuse of discretion standard applies throughout this analysis.
A party is entitled to have the court instruct the jury on its theory of the case if evidence exists in the record to support the theory. State v. Hughes, 106 Wash.2d 176, 191, 721 P.2d 902 (1986). Here, Mr. Hall must show: "(1) the crime charged contains an element of a particular mental state; (2) there is substantial evidence of alcohol consumption; and (3) substantial evidence in the record exists showing the alcohol consumption affected his ability to possess the required mental state[.]" State v. Priest, 100 Wash.App. 451, 453-54, 997 P.2d 452 (2000) (citing State v. Gabryschak, 83 Wash.App. 249, 252, 921 P.2d 549 (1996)). The parties' arguments are directed solely to the third factor. Thus, we examine the record to decide if sufficient evidence existed to link Mr. Hall's alcohol consumption with his alleged diminished capacity to form intent.
Dr. Mays testified Mr. Hall would have difficulty controlling his behavior "if intoxicated" or "even mildly intoxicated[.]" "What is relevant is the degree of intoxication and the effect it had on the defendant's ability to formulate the requisite mental state." Priest, 100 Wash.App. at 455, 997 P.2d 452 (citing RCW 9A.16.090; State v. Coates, 107 Wash.2d 882, 889, 735 P.2d 64 (1987)). Here, a critical lack of evidence exists that Mr. Hall was intoxicated or influenced by alcohol consumption.
Both Deputies Mathena and Harris testified that although they could smell alcohol on Mr. Hall, they did not believe the man to be intoxicated. In particular, Deputy Harris, who had specialized training in field sobriety testing, testified that Mr. Hall had "rather good" reflexes and did not slur his words. Thus, we conclude, as did the trial court, that insufficient evidence existed to support giving a voluntary intoxication instruction. Accordingly, the trial court did not err. Priest, 100 Wash.App. at 455, 997 P.2d 452.

B. Intent
The issue is whether the trial court abused its discretion in refusing to include intent in its "to convict" instructions.
"Instructions satisfy the requirement of a fair trial when, taken as a whole, they properly inform the jury of the applicable state law, are not misleading, and permit the defendant to argue his theory of the case." State v. Tili, 139 Wash.2d 107, 126, 985 P.2d 365 (1999) (citing State v. Theroff, 95 Wash.2d 385, 389, 622 P.2d 1240 (1980)). "Absence of an element from the instructions renders the verdict less than complete and the judgment reversible." State v. Daniels, 87 Wash.App. 149, 154-55, 940 P.2d 690 (1997) (citing State v. Smith, 131 Wash.2d 258, 266, 930 P.2d 917 (1997)), review denied, 133 Wash.2d 1031, 950 P.2d 476 (1998).
Washington recognizes three forms of assault: (1) assault by actual battery; (2) assault by attempting to inflict bodily injury on another while having apparent present ability to inflict such injury; and (3) assault by placing the victim in reasonable apprehension of bodily harm. State v. Byrd, 125 Wash.2d 707, 712-13, 887 P.2d 396 (1995); see also State v. Wilson, 125 Wash.2d 212, 218, 883 P.2d 320 (1994). Assault by battery does not require specific intent to inflict harm or cause apprehension; rather, battery requires intent to do the physical act constituting assault. Daniels, 87 Wash.App. at 155, 940 P.2d 690. The other two forms of assault, however, require specific intent that the defendant intended to inflict harm or cause reasonable apprehension of bodily harm. State v. Eastmond, 129 Wash.2d 497, 500, 919 P.2d 577 (1996).
*888 The three "to convict" instructions did not refer to intent. But the instructions did state that the jury must find proof beyond a reasonable doubt that Mr. Hall assaulted the three officers. In that connection, Instruction No. 8 correctly defined the three types of assault along with their required forms of intent. 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 35.50, at 453 (2nd ed. 1994) (WPIC); see Eastmond, 129 Wash.2d at 500, 919 P.2d 577; see also State v. Esters, 84 Wash.App. 180, 182-83, 927 P.2d 1140 (1997). And Instruction No. 9 properly defined intent. WPIC 10.01; RCW 9A.08.010(1)(a); State v. Allen, 101 Wash.2d 355, 359, 678 P.2d 798 (1984). Moreover, Instruction No. 10 instructed the jury that it could consider diminished capacity, evidence of mental illness or disorder, in determining whether Mr. Hall could form the requisite intent. WPIC 18.20; State v. Ferrick, 81 Wash.2d 942, 944-45, 506 P.2d 860 (1973).
Viewed in their entirety, the instructions properly informed the jury that intent was an essential element of third degree assault. See Esters, 84 Wash.App. at 185, 927 P.2d 1140. Hence, Mr. Hall's argument is unpersuasive. Therefore, we conclude the trial court did not err.

C. Attempted Assault
The issue is whether the trial court abused its discretion in refusing to give the jury instructions on the lesser included crime of "attempted" third degree assault.
"A lesser included offense instruction is proper only if each element of the lesser offense is necessarily included in the charged offense and `there is sufficient evidence to support an inference that the lesser crime was committed.'" State v. Charles, 126 Wash.2d 353, 355, 894 P.2d 558 (1995) (quoting State v. Speece, 115 Wash.2d 360, 362, 798 P.2d 294 (1990)). Here, Mr. Hall requested an instruction on attempted third degree assault. "A person is guilty of an attempt to commit crime if, with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020.
As noted earlier, Washington recognizes three means of assault: (1) assault by actual battery; (2) assault by attempting to inflict bodily injury on another while having apparent present ability to inflict such injury; and (3) assault by placing the victim in reasonable apprehension of bodily harm. Byrd, 125 Wash.2d at 712-13, 887 P.2d 396. The State relies on Wilson, 125 Wash.2d at 217-18, 883 P.2d 320, to support its contention that an attempted third degree assault is not possible. But Wilson does not address the issue under consideration here; rather, it discusses the concept of transferred intent. Id. at 218-19, 883 P.2d 320.
By contrast, Division One of this court recognized the crime of attempted assault with regard to placing the victim in apprehension. State v. Music, 40 Wash.App. 423, 432, 698 P.2d 1087 (1985). The Music court reasoned that assault by means of an attempt to inflict harm raises a logical "attempt to attempt" impossibility with regard to attempted assault. Id. But, because the "apprehension" type of assault lacks an attempt element, it is feasible to convict someone of attempting an assault by such means. Id. at 432, 698 P.2d 1087; see also People v. Jones, 443 Mich. 88, 504 N.W.2d 158, 163 (1993) (citing Music with approval); United States v. Locke, 16 M.J. 763, 765 (A.C.M.R.1983) (holding that unsuccessful attempt to frighten victim with "offer to do bodily harm" constitutes attempted assault under military law).
As noted, Washington recognizes three means of assault. Byrd, 125 Wash.2d at 712-13, 887 P.2d 396. The degree of assault charged is irrelevant as all turn on the same core definitions. See IRA P. ROBBINS, DOUBLE INCHOATE CRIMES, 26 Harvard J. on Legis. 1, 103 (1989) (stating that distinctions between assault and aggravated assault "gloss over" core of offenseattempt to commit battery). Here, at least two of the three means of assault would appear to allow inchoate offenses.
The first means of assault requires a completed battery; intentionally touching or striking someone in a harmful or offensive manner. See State v. Humphries, 21 Wash. App. 405, 409, 586 P.2d 130 (1978) (noting that battery is consummated assault). An *889 attempt would appear possible. For example, a person, intending to commit battery by an unlawful, unpermitted touching short of bodily harm, might take a substantial step toward that crime by lying in wait outside the intended victim's home, but the intended victim may never arrive. The substantial step of lying in wait is strongly corroborative of the actor's criminal purpose. See State v. Aumick, 126 Wash.2d 422, 427, 894 P.2d 1325 (1995). Thus, assuming proof existed to establish the hypothetical facts, an attempted unlawful touching would seem to constitute an attempted assault. See State v. White, 324 So.2d 630, 631 (Fla.1976) (noting that Florida's general attempt statute covered unsuccessful attempts to inflict injury on unwary intended victim); ROBBINS, supra, 26 Harv. J. on Legis. at 39 (declining to discuss assault as battery).
The second means of assault includes proof of an attempt to inflict bodily injury within its definition. As noted, the Music court rejected the concept that a separate crime of attempt could be committed. Additionally, the second means of committing assault by attempt contemplates an actual completed crime. When an attempt to commit a specified act is included within a crime definition, then the attempt constitutes the crime rather than the general crime of attempt as found in RCW 9A.28.020. See State v. Austin, 105 Wash.2d 511, 514-15, 716 P.2d 875 (1986) (discussing applicability of attempt statute when crime definition includes attempt). Thus the viability of a separate attempt under the second definition is doubtful.
The third means of assault requires unlawful force with intent to create in the victim apprehension and fear of bodily injury, which results in reasonable apprehension and imminent fear of bodily injury even though the defendant did not intend to inflict bodily injury. Byrd, 125 Wash.2d at 713, 887 P.2d 396. Here again, a defendant could take a substantial step to use unlawful force to intentionally cause fear and apprehension of imminent bodily injury in another person, but again could be prevented from carrying out that act. Music, 40 Wash.App. at 432, 698 P.2d 1087.
Therefore, an attempted third degree assault under at least two of the assault definitions is theoretically valid. From a policy standpoint, allowing inchoate liability for third degree assault fulfills the social function of preventing harmful conduct and punishing those with criminal tendencies before their conduct causes tangible harm. See ROBBINS, supra, 26 Harv. J. on Legis. at 115.
Nevertheless, assuming without deciding that an attempted third degree assault instruction was possible, Mr. Hall must raise sufficient evidence of an attempted assault to justify the requested instruction. Charles, 126 Wash.2d at 355, 894 P.2d 558. Here, Mr. Hall produced no evidence controverting the State's evidence of harmful or offensive contact with Deputy Methena (biting) and Officer Groseclose (spitting). See State v. Nason, 96 Wash.App. 686, 695, 981 P.2d 866 (1999) (discussing bite marks in prosecution for first degree assault of child), cert. denied, ___ U.S. ___, 121 S.Ct. 85, 148 L.Ed.2d 46 (2000); Humphries, 21 Wash. App. at 409, 586 P.2d 130 (spitting can be an assault). Consequently, the trial court did not abuse its discretion in declining an attempted assault instruction.
With regard to Deputy Harris, no proof of actual contact exists. Even still, Mr. Hall was close enough to the deputy that but for the restraints an injury could have resulted. Moreover, the deputy had to dodge the attempted head butts to remove himself from harm's way. This conduct falls within the second definition of assault. Thus an attempt instruction is barred under Music. Hence, the trial court did not abuse its discretion when refusing to instruct on attempt.

D. Knowledge of Victim's Status
The issue is whether the trial court erred by failing to instruct the jury that knowledge the victim was a law enforcement officer engaged in his official duties is an element of third degree assault.
Mr. Hall's arguments are based on State v. Allen, 67 Wash.App. 824, 840 P.2d 905 (1992); a case now disapproved by our Supreme Court. State v. Brown, 140 Wash.2d 456, 467, 998 P.2d 321 (2000). *890 Brown controls here. In a prosecution for third degree assault, the State need not prove the defendant knew the victim was a law enforcement officer performing his official duties at the time of the assault. Id. Mr. Hall's arguments necessarily fail. The trial court did not err.
Affirmed.
KURTZ, C.J., and SWEENEY, J., concur.