# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47615-1-II |
| Respondent, | |
| v. | |
| N.M. | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — NM appeals his conviction for one count of custodial assault and the imposed legal financial obligations (LFOs).  We hold that in viewing the evidence in a light most favorable to the State, a rational trier of fact could find the essential elements of the crime of custodial assault as charged.  Thus, we hold that substantial evidence supports the juvenile court's findings of fact that NM created a reasonable apprehension of bodily harm in the victim and committed actual battery, and that those findings support the juvenile court's conclusion of law that NM committed custodial assault.  We also hold that the LFOs should be stricken. Thus, we affirm NM's conviction but remand with instructions for the juvenile court to strike the LFOs and modify the disposition order consistent with this opinion.

## FACTS

In February 2015, NM was a resident at Green Hill School, a juvenile detention institution. The State charged NM under RCW 9A.36.100(1)(a) with one count of custodial assault against David Baldwin-McGraw, a Green Hill staff member.  The charges were based on allegations that

NM assaulted Baldwin-McGraw by placing him in reasonable fear and apprehension that NM would cause him bodily injury, and by physically striking Baldwin-McGraw.

In the incident leading to the assault charge, David Baldwin-McGraw escorted NM, who was on crutches, to the dining hall. NM was agitated and had earlier threatened to strike Baldwin-McGraw because NM felt disrespected by Baldwin-McGraw's directives to keep up with the rest of the residents. Two other staff members, John Kendall and Scott Broderick, had already escorted the rest of the residents into the dining hall.

Soon after NM entered the kitchen area, Broderick told Kendall to take NM back to his unit because NM was too agitated. NM heard Broderick's instruction, threw his crutches away, and quickly moved toward Baldwin-McGraw. Baldwin-McGraw testified that NM was "very angry" and "frustrated." Verbatim Report of Proceedings (VRP) at 27. According to Kendall's account, NM appeared "[u]nhappy" and "[s]omewhat agitated," so Kendall quickly pursued NM to restrain him. VRP at 42.

As NM approached Baldwin-McGraw, Baldwin-McGraw put his hands in a defensive position. Broderick testified that "[NM] approached [Baldwin-McGraw] in a very aggressive manner." VRP at 60. Kendall testified that he believed that NM was going to strike Baldwin-McGraw.

Baldwin-McGraw "thought there was a possibility of [being hit]. I was just bracing for that possibility." VRP at 29. Baldwin-McGraw testified that "[NM] came in and pushed, came up underneath both of my hands, which caused my hands to kind of come back and I - - I kind of moved back." VRP at 30.

2

After a bench trial, the juvenile court found NM guilty of custodial assault under RCW 9A.36.100(1)(a).[1] The juvenile court entered the following relevant findings of fact and conclusions of law:

> 1.5. When Baldwin-McGraw and [NM] arrived at the dining hall, [NM] became angry. He threw his crutches and then walked quickly up to Baldwin-McGraw.
>
> . . . .
>
> 1.7. [NM's] actions placed Baldwin-McGraw in [ ] fear and apprehension that he would be struck by [NM], and cause Baldwin-McGraw bodily injury.
>
> 1.8. [NM] approached Baldwin-McGraw quickly, and then knocked Baldwin-McGraw's hands out of the way . . . .
>
> 1.9. There was actual contact between [NM's] hands and the hands of Baldwin-McGraw.
>
> . . . .
>
> 2.1. The defendant assaulted Baldwin-McGraw by both placing Baldwin-McGraw in fear and apprehension that the defendant would cause Baldwin-McGraw bodily injury, and by the defendant physically striking the hands of Baldwin-McGraw.
>
> . . . .
>
> 2.3. The defendant is guilty of custodial assault as charged. A juvenile order on adjudication and disposition shall enter consistent with these findings.

Clerk's Papers (CP) at 20-21.

At the disposition hearing, the juvenile court imposed a $100 mandatory crime victim penalty assessment under former RCW 7.68.035(1)(b)(2011), the authorizing statute. The juvenile court also imposed $200 in court-appointed attorney fees without citing to statutory authority. The

---

[1] RCW 9A.36.100(1) provides that "[a] person is guilty of custodial assault if that person is not guilty of an assault in the first or second degree" and if that person:

> (a) Assaults a full or part-time staff member or volunteer, any educational personnel, any personal service provider, or any vendor or agent thereof at any juvenile corrections institution or local juvenile detention facilities who was performing official duties at the time of the assault.

juvenile court did not conduct a hearing on whether NM had the ability to pay the court-appointed attorney fees.  NM appeals.

ANALYSIS

I. STANDARD OF REVIEW

"On a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether a rational trier of fact could find the elements of the offense beyond a reasonable doubt." *State v. B.J.S.*, 140 Wn. App. 91, 97, 169 P.3d 34 (2007).  A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *B.J.S.*, 140 Wn. App. at 97.  We defer to the fact finder on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *B.J.S.*,  140 Wn. App. at 97.

In reviewing a juvenile court adjudication, we must first decide whether substantial evidence supports the juvenile court's findings of fact; and, second, whether those findings support the juvenile court's conclusions of law.  *B.J.S.*, 140 Wn. App. at 97. "Substantial evidence is 'evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.'" *State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006) (quoting *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)).  "The findings of fact must support the elements of the crime beyond a reasonable doubt." *State v. Alvarez*, 105 Wn. App. 215, 220, 19 P.3d 485 (2001).  We review conclusions of law de novo. *B.J.S.*, 140 Wn. App. at 97.  Unchallenged findings of fact are treated as verities on appeal. *B.J.S.*, 140 Wn. App. at 97.

II. SUFFICIENCY OF THE EVIDENCE

NM argues that there was insufficient evidence to establish that he touched the victim and committed actual battery, or created a reasonable fear and apprehension of bodily harm. We disagree.

RCW 9A.36.100(1)(a) provides that "[a] person is guilty of custodial assault if that person is not guilty of an assault in the first or second degree and where the person . . . [a]ssaults a full or part-time staff member or volunteer . . . at any juvenile corrections institution or local juvenile detention facilities who was performing official duties at the time of the assault." Because RCW 9A.36.100(1)(a) does not define "assault," Washington courts use the common law definition of "assault." *State v. Ratliff*, 77 Wn. App. 522, 524, 892 P.2d 118 (1995). Washington courts recognize three forms of assault: (1) assault by attempting to cause bodily harm to another while presently capable of causing that harm, (2) assault by actual battery, and (3) assault by placing another in reasonable apprehension of bodily harm. *State v. Hall*, 104 Wn. App. 56, 62, 14 P.3d 884 (2000). The last two types of assault are at issue here.

A. ACTUAL BATTERY

"Actual battery" is "'an unlawful touching with criminal intent.'" *State v. Wilson*, 125 Wn.2d 212, 218, 883 P.2d 320 (1994) (quoting *State v. Bland*, 71 Wn. App. 345, 353, 860 P.2d 1046 91993)). Under the common law, a touching is unlawful when the person touched did not consent to be touched, and the touch was either harmful or offensive. *State v. Shelley*, 85 Wn. App. 24, 28-29, 929 P.2d 489 (1997). A touching is offensive if it would offend an ordinary person who is not unduly sensitive. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 982-83, 329 P.3d 78 (2014) (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS:

CRIMINAL 35.50, at 547 (3d ed. 2008) (WPIC)). The touching does not need to cause physical injury. *Villanueva-Gonzalez*, 180 Wn.2d at 982-83; *see also* WPIC 35.50. Further, actual battery does not require the intent to do harm, only the intent to do the physical act. *Hall*, 104 Wn. App. at 887; *see also* RCW 9A.08.010(1)(a).

We consider whether the evidence establishes that NM touched Baldwin-McGraw and committed an actual battery. Baldwin-McGraw testified that "[NM] came in and pushed, came up underneath both of my hands, which caused my hands to kind of come back and I - - I kind of moved back." VRP (05/12/15) at 30. At trial, the juvenile court was not persuaded by NM's attempt to impeach Baldwin-McGraw's testimony, and found that Kendall's and Broderick's testimony was consistent with Baldwin-McGraw's testimony. We defer to the trial court on issues of witness credibility and reliability of testimony. *B.J.S.*, 140 Wn. App. at 97. The evidence also showed that NM was agitated with Baldwin-McGraw and threatened him. When NM was told he would be taken back to his unit, NM became very angry, threw his crutches to the ground, and moved quickly towards Baldwin-McGraw pushing underneath his hands.

When the evidence is viewed in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that NM intentionally touched Baldwin-McGraw in an offensive manner as charged. Thus, we hold that substantial evidence supports the juvenile court's findings that "[NM] knocked Baldwin-McGraw's hands out of the way" and that "[t]here was actual contact between [NM's] hands and the hands of Baldwin-McGraw." CP at 20-21. We also hold that these findings support the juvenile court's conclusion of law that NM committed custodial assault through actual battery.

B. REASONABLE APPREHENSION OF BODILY HARM

NM also argues that there is insufficient evidence to support the juvenile court's finding that NM intentionally placed Baldwin-McGraw in reasonable fear and apprehension of bodily harm.[2] We disagree.

A person who places another person in reasonable apprehension of bodily harm and intended that result, or intended to cause bodily harm, commits assault. *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995). "Bodily harm" is "physical pain or injury, illness, or an impairment of physical condition." RCW 9A.04.110(4)(a).

We consider whether the evidence establishes that NM placed Baldwin-McGraw in reasonable fear and apprehension of bodily harm. NM threatened to strike Baldwin-McGraw before they entered the dining hall. Baldwin-McGraw testified that NM was "very angry" and "frustrated" when he threw his crutches and advanced quickly toward Baldwin-McGraw. VRP (05/12/15) at 27. NM was "[u]nhappy" and "[s]omewhat agitated" when he "approached [Baldwin-McGraw] in a very aggressive manner." VRP (05/12/15) at 42, 60. Kendall believed that NM was going to strike Baldwin-McGraw. Baldwin-McGraw "thought there was a possibility of [being hit]. I was just bracing for that possibility." VRP (05/12/15) at 29. NM knocked Baldwin-McGraw's hands out of a defensive position.

---

[2] NM does not dispute that Baldwin-McGraw subjectively apprehended bodily harm.

In viewing the evidence in a light most favorable to the State, a rational trier of fact could find that NM placed the victim in reasonable fear and apprehension of bodily harm. Thus, we hold that substantial evidence supports the juvenile court's findings that NM intended to harm Baldwin-McGraw and that these findings support the juvenile court's conclusion of law that NM committed assault by intentionally placing Baldwin-McGraw in reasonable fear and apprehension of bodily harm.

### III. LEGAL FINANCIAL OBLIGATIONS

NM argues that we should strike the $100 mandatory crime victim penalty assessment because the legislature's amendment to RCW 7.68.035(1)(b)[3] retroactively invalidated the penalty assessment. The legislature amended RCW 7.68.035(1)(b)[4] and repealed RCW 13.40.145,[5]

---

[3] Former RCW 7.68.035(1)(b) (2011) provides:

> When any juvenile is adjudicated of any offense in any juvenile offense disposition under Title 13 RCW . . . there shall be imposed upon the juvenile offender a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be one hundred dollars for each case or cause of action that includes one or more adjudications for a felony or gross misdemeanor and seventy-five dollars for each case or cause of action that includes adjudications of only one or more misdemeanors.

[4] Current RCW 7.68.035(1)(b) provides:

> When any juvenile is adjudicated of an offense that is a most serious offense as defined in RCW 9.94A.030, or a sex offense under chapter 9A.44 RCW, there shall be imposed upon the juvenile offender a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be one hundred dollars for each case or cause of action.

[5] Repealed RCW 13.40.145 provides, in part:

> Upon disposition or at the time of a modification or at the time an appellate court remands the case to the trial court following a ruling in favor of the state the court

effective July 24, 2015, before NM's disposition hearing. Laws of 2015, ch. 265 §§ 8, 39. The State concedes this issue and acknowledges that Lewis County Juvenile Court no longer collects the crime victim penalty and that it should be stricken. We agree and hold that the crime victim penalty should be stricken.

NM also argues that we should strike the $200 in discretionary attorney fees because the juvenile court failed to conduct an inquiry into NM's ability to pay under former RCW 13.40.145.[6] The State concedes this issue and acknowledges that Lewis County Juvenile Court no longer collects the court-appointed attorney fees. We agree and hold that the court-appointed attorney fees should be stricken.

## CONCLUSION

We hold that substantial evidence supports the juvenile court's findings of fact that NM created a reasonable fear of apprehension of bodily harm in and committed actual battery against the victim, and that those findings support the juvenile court's conclusion of law that NM committed custodial assault. We also hold that the LFOs should be stricken. Thus, we affirm

---

may order the juvenile or a parent or another person legally obligated to support the juvenile to appear, and the court may inquire into the ability of those persons to pay a reasonable sum representing in whole or in part the fees for legal services provided by publicly funded counsel and the costs incurred by the public in producing a verbatim report of proceedings and clerk's papers for use in the appellate courts.

If, after hearing, the court finds the juvenile, parent, or other legally obligated person able to pay part or all of the attorney's fees and costs incurred on appeal, the court may enter such order or decree as is equitable and may enforce the order or decree by execution, or in any way in which a court of equity may enforce its decrees.

[6] Because NM will receive his requested relief, we do not need to reach his other arguments.

No. 47615-1-II

NM's conviction but remand with instructions for the juvenile court to strike the LFOs and modify the disposition order consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

JOHANSON, P.J.

LEE, J.