IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37477-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JULIO CESAR PANTOJA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — Julio Cesar Pantoja appeals his convictions for two counts of second degree assault and challenges two terms of his sentence. All the issues are raised for the first time on appeal, but the instructional error alleged is of constitutional magnitude. In a supplemental challenge that we allowed Mr. Pantoja to raise following the Washington Supreme Court's decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), he appeals his conviction for unlawful possession of a controlled substance.

We find no instructional error. Following *Blake*, his controlled substance conviction must be vacated. Resentencing will be required, at which Mr. Pantoja can object to the community custody condition and the legal financial obligation that he did not challenge at his original sentencing. We affirm his convictions for second degree assault, vacate his controlled substance conviction, and remand for resentencing.

FACTS AND PROCEDURAL BACKGROUND

The second degree assaults at issue on appeal occurred on an evening in July 2018, following a barbecue at the home of the parents of Mr. Pantoja. Mr. Pantoja was living at the home at the time, as was Danielle Passmore, Mr. Pantoja's girlfriend, and the couple's three children.

After most of the family had gone inside (Mr. Pantoja was still outside) Ms. Passmore asked her son B.P., who was then 14, to go downstairs and retrieve her phone. Just as B.P. went downstairs, Mr. Pantajo came inside, angry about someone having turned off his music.

Mr. Pantoja followed B.P. downstairs and called him into the living area, where his (Mr. Pantoja's) bed was located. When B.P. entered, Mr. Pantoja was holding a pistol that he pointed at B.P. and angrily asked if B.P. had turned off his music. Ms. Passmore heard Mr. Pantoja yelling at B.P. and ran downstairs, where she saw Mr. Pantoja pointing a gun at her son. She pushed B.P. toward the stairs, told him to run, and moved toward Mr. Pantoja, telling him that if he was going to shoot someone, he should shoot her. He grabbed her by the neck and pulled her to him, her back against his chest. As he held her, he hit her head with the gun. She described it at Mr. Pantoja's trial as "tapping" her head, explaining that "I didn't—well, sustain any injuries or anything." Report of Proceedings (RP) at 295. B.P. saw Mr. Pantoja grab his mother and tap his gun on her head before running upstairs. Mr. Pantoja then let Ms. Passmore go. B.P.'s cousin called police.

2

Mr. Pantoja left through the home garage. He would later testify that he drove down the street, briefly spoke with a coworker, and then returned to his parent's backyard. He was emptying water from his young children's pool when officers arrived.

Sergeant Brian Miller and another responding officer found Mr. Pantoja in the backyard. When Mr. Pantoja confirmed his identity, Sergeant Miller pointed his gun at him and told him to put his hands in the air. After initially arguing with the sergeant that he had done nothing wrong, Mr. Pantoja complied, but only after pulling a wallet from his pocket and tossing it to the side.

After interviewing B.P. and Ms. Passmore, the officers informed Mr. Pantoja that he was under arrest. Their search incident to arrest included the wallet he had tossed aside. Inside the wallet was a folded-up dollar bill that contained a white powdery substance. It proved to be cocaine hydrochloride.

Officers obtained a search warrant for Mr. Pantoja's car and the home. A Glock pistol with a loaded magazine was found in the car. Three additional magazines were found in the living area where Mr. Pantoja slept. Two shotguns were found under the mattress in that room.

Mr. Pantoja was charged with two counts of assault in the second degree with firearm and domestic violence enhancements, unlawful possession of a controlled substance with a firearm enhancement, and three counts of first degree unlawful possession of a firearm.

3

At Mr. Pantoja's three-day jury trial, Ms. Passmore, B.P., three responding police officers, a detective who assisted with the search warrants, and a forensic witness from the Washington State Patrol Crime Laboratory testified for the State. Mr. Pantoja testified in his own defense and acknowledged that as he and his father were outside cleaning up after the barbecue someone turned off their music, which led to an argument with Ms. Passmore. After they argued, he went downstairs to get his keys, because he usually left when he and Ms. Passmore argued. He denied that the gun-wielding described by Ms. Passmore and B.P. ever occurred.

He testified he had found the folded dollar bill earlier that day, while friends were over. He claimed he put it in his wallet without unfolding it and was unaware that anything was inside. He denied owning any firearms or being in possession of any on the day of his arrest.

The jury acquitted Mr. Pantoja of the charges of unlawful possession of the two shotguns and found he was not armed during his commission of possession of a controlled substance. It otherwise found him guilty as charged. At sentencing the State asked the court to assess the $100 DNA[1] collection fee because "according to his criminal history, has not been previously collected or typed. I think that's a result of the age of his prior convictions." RP at 437. The court imposed mid-range concurrent sentences for the crimes plus 36 months for the firearm enhancements, resulting in a total sentence of

---

[1] Deoxyribonucleic acid.

4

90 months. It imposed the $100 DNA collection fee and 18 months of community custody for counts I and II, and 12 months for count III, with standard conditions requested by the State. The conditions did not include a prohibition on alcohol, but did require him to submit to "random urinalysis, BAC,[2] or other tests" as directed by community corrections officers. Clerk's Papers (CP) at 138.

Mr. Pantoja appeals.

## ANALYSIS

Mr. Pantoja contends the trial court erred by 1) omitting intent from the to-convict instruction and including it only in the definitional instruction for assault, 2) imposing a community custody condition that requires him to submit to BAC testing when the court did not prohibit him from consuming alcohol, 3) imposing the $100 DNA collection fee when he has previously been convicted of a felony that would have required DNA collection, and 4) supplementally, that his conviction for unlawful possession of a controlled substance must be vacated in light of *Blake*, and resentencing is required. We decline to reach the second and third contentions because they were not raised in the trial court, *see* RAP 2.5(a), and because Mr. Pantoja will be able to raise the issues at resentencing. We address the two remaining issues in the order stated.

---

[2] Blood alcohol content.

No. 37477-7-III
*State v. Pantoja*


I.      THE TRIAL COURT'S TO-CONVICT INSTRUCTIONS WERE NOT CONSTITUTIONALLY
        DEFICIENT

The trial court provided the jury with a definition of assault and the following to-convict instruction for the count alleging Mr. Pantoja's second degree assault of Ms. Passmore:

INSTRUCTION NO. 12

To convict the defendant of the crime of assault in the second degree as charged in count I, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 29th day of July, 2018, the defendant assaulted Danielle Susanne Passmore with a deadly weapon; and

(2) That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 91. The court's to-convict instruction for the count alleging the second degree assault of B.P. was identical to instruction 12 except for its identification of the victim. Mr. Pantoja did not object to the jury instructions.

For the first time on appeal, he contends that the to-convict instructions for the assault counts relieved the State of its burden of proof because they omitted the element of intent.

6

Both the United States and Washington Constitutions require that a jury be instructed on all essential elements of the crime charged. *State v. O'Donnell*, 142 Wn. App. 314, 322, 174 P.3d 1205 (2007); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. The omission of an element of a charged crime creates manifest error affecting a constitutional right that can be considered for the first time on appeal. *State v. Mills*, 154 Wn.2d 1, 6, 109 P.3d 415 (2005). We review the adequacy of a challenged "to convict" instruction de novo. *Id.* at 7.

Mr. Pantoja was charged with second degree assault under RCW 9A.36.021(1)(c), which applies when a person, under circumstances not amounting to assault in the first degree, "[a]ssaults another with a deadly weapon." Two of seven subsections of RCW 9A.36.021(1) do not contain language explicitly requiring a particular state of mind; the subsection under which Mr. Pantoja was charged is one of them. *See also* RCW 9A.36.021(g).

Nonetheless, all three common law forms of assault recognized by Washington require intentional conduct. Assault by actual battery requires the intent to do the physical act constituting assault. *State v. Hall*, 104 Wn. App. 56, 62, 14 P.3d 884 (2000). Assault by an attempt with unlawful force to inflict bodily injury, tending but failing to accomplish it (attempted battery), requires the specific intent to inflict substantial bodily harm. *State v. Eastmond*, 129 Wn.2d 497, 500, 919 P.2d 577 (1996), *overruled in part on other grounds by State v. Easterlin*, 159 Wn.2d 203, 208 n.2, 149 P.3d 366 (2006).

7

Assault by placing the victim in reasonable apprehension of bodily harm requires the

specific intent to cause that apprehension. *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d

396 (1995).

The trial court's instruction to Mr. Pantoja's jury defining the forms of common

law assault recognized in Washington included the requirement of intentional conduct:

INSTRUCTION NO. 11

> An assault is an *intentional* touching or striking of another person
> that is harmful or offensive regardless of whether any physical injury is
> done to the person. A touching or striking is offensive if the touching or
> striking would offend an ordinary person who is not unduly sensitive.

> An assault is also an act, with unlawful force, done with *intent* to
> inflict bodily injury upon another, tending but failing to accomplish it and
> accompanied with the apparent present ability to inflict the bodily injury if
> not prevented. It is not necessary that bodily injury be inflicted.

> An assault is also an act done with the *intent* to create in another
> apprehension and fear of bodily injury, and which in fact creates in another
> a reasonable apprehension and imminent fear of bodily injury even though
> the actor did not actually intend to inflict bodily injury.

CP at 90 (emphasis added).

"Appellate courts 'analyze a challenged jury instruction by considering the

instructions as a whole and reading the challenged portions in context.'" *State v.

Cordero*, 170 Wn. App. 351, 370, 284 P.3d 773 (2012) (quoting *State v. Hayward*, 152

Wn. App. 632, 642, 217 P.3d 354 (2009)). "'Jury instructions, *taken in their entirety*,

must inform the jury that the State bears the burden of proving every essential element of

8

a criminal offense beyond a reasonable doubt.'" *State v. Johnson*, 180 Wn.2d 295, 306, 325 P.3d 135 (2014) (quoting *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995)).

Mr. Pantoja relies, however, on Washington cases holding that an instruction that purports to be a complete statement of the crime must contain every element of the crime charged. *Mills*, 154 Wn.2d at 8. "When the trial court gives a to-convict instruction, that instruction must 'contain all of the elements of the crime because it serves as a "yardstick" by which the jury measures the evidence to determine guilt or innocence.'" *State v. Orn*, 197 Wn.2d 343, 361, 482 P.3d 913 (2021) (quoting *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997)). Courts "will not look to other jury instructions to supplement a defective 'to convict' instruction." *Johnson*, 180 Wn.2d at 306.

We acknowledge that Washington decisions sometimes speak of intent being an element of assault. Indeed, this court's decision in *Hall*, which rejected the argument that intent must be identified as an element in a "to convict" instruction given in a third degree assault case, states in conclusion that the jury instructions given (that omitted intent from the "to convict" instruction) "properly informed the jury that intent was an essential element." 104 Wn. App. at 63. Nonetheless, controlling Washington cases are reasonably read as holding that assault, not intent, is an essential element; that "assault" conveys intentional conduct; and that the pattern instruction that identifies the forms of assault recognized in Washington (including their requirement of intentional conduct) is merely definitional.

9

"The elements of a crime are those facts 'that the prosecution must prove to sustain a conviction.'" *State v. Miller*, 156 Wn.2d 23, 27, 123 P.3d 827 (2005) (quoting BLACK'S LAW DICTIONARY 559 (8th ed. 2004)). "It is proper to first look to the statute to determine the elements of a crime." *Id.* Looking first to statutory language respects the authority of the legislature to define and punish criminal conduct, subject only to the constraints of the constitution. *State v. Wu*, 194 Wn.2d 880, 890, 453 P.3d 975 (2019). To be guilty of assault under RCW 9A.36.021(c) requires only that a person "[a]ssaults another with a deadly weapon." The statute does not mention intent.

The Washington Supreme Court has held that the word "assault" has a plain meaning that "conveys an intentional or knowing act." *State v. Taylor*, 140 Wn.2d 229, 242, 996 P.2d 571 (2000). *Taylor* involved a challenge to a charging document, which the court held was constitutionally sufficient under the strict standard of construction without including intent as an element of the charge of fourth degree assault.

In *State v. Smith*, the court considered whether the common law forms of assault are "alternative means" of committing assault, which would require the State to present substantial evidence to support each form of assault that was charged or instructed. 159 Wn.2d 778, 787, 154 P.3d 873 (2007). In holding that they are not alternative means, the court reasoned that when the jury is provided with definitions of the common law forms, those definitions "merely define the element of assault." *Id.*

10

Providing jurors with a definition that clarifies an element, but is not itself an element, does not relieve the State of its burden to prove the element as clarified. *See, e.g.*, *State v. Stevens*, 158 Wn.2d 304, 309-10, 143 P.3d 817 (2006). In *Stevens*, the court was called on to clarify the application of *State v. Lorenz*, 152 Wn.2d 22, 93 P.3d 133 (2004), in which it held that sexual gratification was not an element of child molestation that needs to be included in the to-convict instruction, but is essential to the statutorily required element of "sexual contact." In *Stevens*, the court held that while not an element, the State still "must prove a defendant acted for the purpose of sexual gratification." 158 Wn.2d at 309-10. "Intent is relevant to the crime of second degree child molestation because it is necessary to prove the element of sexual contact." *Id.* at 310.

The same is true here. Intent is relevant to the crime of second degree assault because it is necessary to prove the element of assault. It is not itself an element. The trial court's "to convict" instructions were not constitutionally deficient.

II.     FOLLOWING *BLAKE*, IT IS NECESSARY TO VACATE MR. PANTOJA'S CONTROLLED SUBSTANCE CONVICTION AND REMAND FOR RESENTENCING

In supplemental briefing, Mr. Pantoja argues that his conviction for possession of a controlled substance is void in light of *Blake* and his remaining convictions require resentencing.

No. 37477-7-III
*State v. Pantoja*

The Washington Supreme Court recently held in *Blake* that RCW 69.50.4013(1), the simple drug possession statute, violates the due process clauses of the state and federal constitutions and is void because it "criminalize[s] innocent and passive possession, even by a defendant who does not know, and has no reason to know, that drugs lay hidden within something that they possess." 197 Wn.2d at 195. "A statute or ordinance which is void as being in conflict with a prohibition contained in the constitution is of no force and effect." *City of Seattle v. Grundy*, 86 Wn.2d 49, 50, 541 P.2d 994 (1975). The State properly concedes that Mr. Pantoja's conviction should be vacated and the case remanded for resentencing.

We affirm Mr. Pantoja's assault convictions. We vacate his conviction for violation of RCW 69.50.4013(1) and remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, A.C.J.

WE CONCUR:

Lawrence-Berrey, J.                    Fearing, J.

12