# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58697-5-II |
| Respondent, | |
| v. | |
| TIMOFEY GORLACHEV, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Timofey Gorlachev was arrested, handcuffed, and placed in the back of a patrol car. In the patrol car, he began banging his head against the partition, and two officers removed him and eventually restrained him on the ground. While on the ground, Gorlachev spit at and made threats to harm one of the officers, Paul Simbeck.

The State charged Gorlachev with third degree assault of a law enforcement officer and felony harassment of a criminal justice participant. The jury instructions defined assault only as an intentional touching or striking. The jury found Gorlachev guilty and he appeals. He claims that the State failed to prove that his spit actually touched Simbeck. He also claims that his statements would not have made a reasonable officer afraid because they were absurd and he was immobilized at the time.

We conclude that the State's evidence at trial was not sufficient to demonstrate that Gorlachev's spit made contact with Simbeck, which was an essential element of third degree assault under the jury instructions. However, we conclude that sufficient evidence supported

Gorlachev's conviction for felony harassment of a criminal justice participant. Consequently, we reverse the conviction for third degree assault, but we otherwise affirm. We remand for the trial court to vacate the conviction for third degree assault and correct the judgment and sentence.

FACTS

I. BACKGROUND

Police found Gorlachev sleeping in the front passenger seat of a stolen vehicle. Officer Simbeck asked Gorlachev to exit the vehicle and patted him down for weapons. Gorlachev was initially cooperative. When Simbeck confirmed the vehicle was stolen, he arrested and handcuffed Gorlachev, placing him in the back seat of a patrol car. Another officer, Michael Sousley, arrived to transport Gorlachev to jail.

While in the patrol car, Gorlachev started forcefully banging his head on the partition between the front and back seats. Simbeck and Sousley removed Gorlachev from the patrol car to keep him from further injuring himself. The officers pushed Gorlachev against the side of the patrol car, but Gorlachev continued to struggle and bang his head against the car. As a result, Gorlachev cut his forehead and blood ran onto his face. The officers then put Gorlachev on the ground and used a hobble restraint on him, which kept him mostly immobilized with his hands and feet secured. Simbeck rolled Gorlachev over so that he was on his back in the hobble restraint. Simbeck stood up and moved about a foot away when Gorlachev spit at him. The sound of the spitting is audible on the officers' body camera videos, but due to the angles of the body cameras, it is not clear where the spit landed. Simbeck was standing and Gorlachev was on the ground at the time. To keep Gorlachev from spitting again, Simbeck immediately rolled him away and the

2

officers placed a breathable mask called a "spit sock" over his face. Verbatim Rep. of Proc. (VRP) at 284.

While in the hobble restraint, Gorlachev and Simbeck had several verbal exchanges. After the spitting, Simbeck told Gorlachev, "You just got yourself an assault three, congratulations." Ex. 16, at 1 min., 33 sec. to 1 min., 37 sec. Gorlachev later noted Simbeck's name and said he would remember him. Simbeck responded, "That's fine. You think you're the first person that tried to intimidate me?" and repeated his name for Gorlachev. Ex. 9, at 8 sec., to 13 sec. Gorlachev threatened to "pull a knife" on Simbeck and told Simbeck that he would beat him up in a UFC fight. VRP at 266. When Simbeck said that Gorlachev would face additional charges, Gorlachev repeatedly told Simbeck "F[***] you," and Simbeck replied, "Welcome to Pierce County." *Id.* Gorlachev also said that he would "fly a drone over" Simbeck, to which Simbeck replied, "[O]kay" and laughed. VRP at 264. Gorlachev, who is of Russian descent, told Simbeck that he could not handle "a Russian," and Simbeck replied, "The Russian can't handle himself." Ex. 16, at 7 min., 46 sec. to 7 min., 58 sec.

When first responders arrived on the scene, they asked Gorlachev, "Is it cool if we bandage you up?" and Gorlachev replied, "Yeah, they beat the f[***] out of me." Ex. 16, at 11min., 27 sec. to 11 min., 33 sec. Simbeck then told them that Gorlachev spit blood at him, but Gorlachev clarified, "I spit at your ass, only your ass." Ex. 15, at 5 sec. to 8 sec. About a minute later, after the first responders had looked at Gorlachev's wounds, one first responder said, "I'll try to get you cleaned up here," and Gorlachev thanked him. Ex. 16, at 12 min., 50 sec. to 12 min., 56 sec. While

interacting with the first responders, Gorlachev was mostly still and silent, except when he continued to engage with Simbeck.[1]

After this encounter, Gorlachev was charged with third degree assault of a law enforcement officer under RCW 9A.36.031(1)(g) and felony harassment of a criminal justice participant under RCW 9A.46.020(2)(b)(iii).[2]

## II. JURY TRIAL

Gorlachev's case proceeded to a jury trial. Officers Simbeck and Sousley both testified, and the jury viewed their body camera footage from the incident in short segments as the officers testified about it.

A.     Testimony

During the trial, Simbeck stated multiple times that Gorlachev "spit at" him while restrained on the ground. VRP at 228, 232, 234, 235, 271. However, Simbeck explained that he rolled Gorlachev away and put the spit sock on him so that Gorlachev could not "spit *on*" the officers. VRP at 233 (emphasis added). Simbeck testified that immediately after Gorlachev spit at him, Simbeck asked Sousley if there was blood on his face, but Sousley "didn't see any." VRP at

---

[1] We recognize that Simbeck largely failed to deescalate this encounter. Even after immobilizing Gorlachev, who was clearly agitated and bleeding, Simbeck made prodding comments to Gorlachev about his ethnicity and the future charges that he might face. Simbeck testified that he initially removed Gorlachev from the police car for Gorlachev's own safety. But Simbeck's treatment of Gorlachev during the encounter did not appear to reflect a desire to bring calm and reduce the chance of violent outbursts.

In contrast, the first responders who arrived on the scene to offer medical aid addressed Gorlachev in an even and concerned tone, despite his agitation, which allowed them to address his head wound.

[2] Gorlachev was also charged with vehicle prowling and deadly weapons enhancements. The trial court dismissed the vehicle prowling charge before trial and dismissed the weapons enhancements during trial upon Gorlachev's motion.

259. Several minutes later, Simbeck checked his face in a mirror and also did not see any spit or blood. Sousley did not see Gorlachev spit at Simbeck, but he heard a loud spitting noise.

Simbeck also testified about Gorlachev's statements during the encounter. When Gorlachev threatened to fly a drone over him, Simbeck acknowledged that he chuckled because he did not understand what that would accomplish and did not perceive it as a threat. However, Simbeck testified that he did perceive Gorlachev's comment about pulling a knife as a threat, though Gorlachev was hobbled and immobilized at the time.

Simbeck testified that during the encounter, Gorlachev stated that he would "'remember,'" "find," and "assault" Simbeck. VRP at 243-44. Simbeck expressed concern about Gorlachev's promises because it is "not difficult to find someone in this day and age," stating, "I'm a public servant. All of my information is online; it's out there." VRP at 243. Simbeck further stated, "I don't want someone to find me, share my information, harm . . . me or my family simply because I'm doing my job." VRP at 244. He explained, "Gorlachev threatened to assault me, to find me. He noted my name, you know. I don't know of any other Simbecks that live in Pierce County." VRP at 244-45.

## B.     Jury Instructions and Convictions

The jury was instructed on the definition of assault, and while it is unclear which party proposed this instruction, neither party objected:

> An assault is an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.

Clerk's Papers (CP) at 85.

The jury was also instructed on felony harassment, and the instruction required the jury to find, among other things, that the criminal justice participant experienced reasonable fear that the threat would be carried out and it was apparent that the person had the present or future ability to carry out the threat.

The jury found Gorlachev guilty of assault in the third degree of a law enforcement officer and felony harassment of a criminal justice participant. The trial judge sentenced Gorlachev to five months of confinement for each of the two counts, to be served concurrently.

Gorlachev appeals, arguing that neither of his convictions was supported by substantial evidence.

ANALYSIS

In a challenge to the sufficiency of the evidence, our review is "highly deferential to the jury's decision." *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014). We ask whether, taking the State's evidence as true and drawing all reasonable inferences in the State's favor, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Altman*, 23 Wn. App. 2d 705, 710, 520 P.3d 61 (2022). Circumstantial evidence and direct evidence are equally reliable under this standard. *State v. Liden*, 138 Wn. App. 110, 117, 156 P.3d 259 (2007).

I. THIRD DEGREE ASSAULT OF A LAW ENFORCEMENT OFFICER

Gorlachev argues that there was not sufficient evidence to show that his spit actually landed on Simbeck, so the State failed to satisfy the "touching" element of third degree assault. We agree.

A person is guilty of third degree assault of a law enforcement officer when they assault "a law enforcement officer or other employee of a law enforcement agency who was performing

6

[their] official duties at the time of the assault." RCW 9A.36.031(1)(g).[3] Because "assault" is not statutorily defined, common law definitions are used to "elaborate upon and clarify" the term as it is used in the charging statute. *State v. Smith*, 159 Wn.2d 778, 785-86, 154 P.3d 873 (2007). Here, the jury was instructed only on assault by actual battery: "An assault is an intentional *touching or striking* of another person that is harmful or offensive regardless of whether any physical injury is done to the person." CP at 85 (emphasis added); *see also State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 982, 329 P.3d 78 (2014). For sufficiency review, jury instructions are the controlling law and define the essential elements of the crime. *State v. Johnson*, 188 Wn.2d 742, 755, 399 P.3d 507 (2017).

A touching is "'offensive'" if it would offend an ordinary person who is not unduly sensitive. *Villanueva-Gonzalez*, 180 Wn.2d at 982 (quoting record). Spitting on another person without their consent is an unlawful touching and can constitute an assault. *State v. Jackson*, 145 Wn. App. 814, 821, 187 P.3d 321 (2008) (collecting cases) ("[F]or over three centuries, the common law has considered the projection of one's bodily fluid onto another a touching sufficient to support a criminal conviction."); *State v. Hall*, 104 Wn. App. 56, 65-66, 14 P.3d 884 (2000); *State v. Humphries*, 21 Wn. App. 405, 409, 586 P.2d 130 (1978).

The relevant definition of assault from the jury instructions in this case explicitly required "*touching or striking* of another person." CP at 85 (emphasis added). Here, Simbeck repeatedly testified that Gorlachev "spit at" him, but he never said that Gorlachev spit *on* him or that Gorlachev's spit landed on his person at all. VRP at 228, 232, 234, 235, 271. In fact, Simbeck and Sousley both stated that even though Gorlachev's face was covered in blood at the time of the

---

[3] We cite the current version of the statute as the relevant language remains the same.

spitting, they did *not* see blood on Simbeck's face after Gorlachev spit at him. Simbeck specifically said that he did not see spit on his face after the incident. This is the only testimony on the record about whether Gorlachev's spit touched Simbeck.

The State argues that the terms "spit at" and "spit on" are interchangeable. However, Simbeck did not use the terms interchangeably. Multiple times during the trial, Simbeck said the officers put the spit sock on Gorlachev so that he could not "spit *on*" them. VRP at 233-34 (emphasis added). Simbeck used the terms exclusively in different contexts. He put the spit sock on Gorlachev to prevent the outcome of being "spit on," which he was concerned about because he had just been "spit at." However, even if the jury did not note this change in Simbeck's language, no rational juror could conclude, without other supporting evidence, that Simbeck's use of the ambiguous "spit at" proves beyond a reasonable doubt that Gorlachev's spit landed on Simbeck. Viewing the officers' testimony as true and making all inferences in the State's favor, it is not sufficient to show that Gorlachev's spit actually touched Simbeck.

Additionally, the video footage that the jury viewed is insufficient evidence to establish the touching element of third degree assault. From this footage, a viewer can hear Gorlachev spit and can even potentially see the spit travel in the frame. But, in part due to its angle, the video footage does not show where the spit landed. From the footage, it is not a reasonable inference to assume that the spit landed on Simbeck, who was standing upright about a foot away from Gorlachev as he laid on the ground, without supporting testimony. No rational trier of fact could conclude that the video proves this fact beyond a reasonable doubt.

Even under the deferential sufficiency of the evidence standard, no rational jury could infer from the evidence presented at trial, given the officers' testimony and the lack of clarity in the

videos, that the State established that Gorlachev's spit touched Simbeck beyond a reasonable doubt. Thus, the State did not satisfy the touching element of third degree assault of a law enforcement officer.

We therefore reverse Gorlachev's conviction for third degree assault.

## II. FELONY HARASSMENT OF A CRIMINAL JUSTICE PARTICIPANT

Gorlachev also claims that the State did not present sufficient evidence to show that his statements would have made a reasonable officer afraid, so they did not constitute criminal harassment. He contends that the statements were either impossible to carry out from Gorlachev's immobilized position, or they were so absurd and non-specific that a reasonable officer would not fear bodily injury. We disagree.

Under RCW 9A.46.020(1)(a)(i),[4] a person is guilty of harassment if they "knowingly" threaten to "cause bodily injury immediately or in the future to the person threatened." The threat must place "the person threatened in reasonable fear that the threat will be carried out." RCW 9A.46.020(1)(b). Violation of this statute is a felony if the individual harasses a criminal justice participant "who is performing [their] official duties at the time the threat is made." RCW 9A.46.020(2)(b)(iii). Local law enforcement officers are criminal justice participants. RCW 9A.46.020(4)(a).

Words and conduct are only a threat if the officer's resulting fear is one "that a reasonable [officer] would have under all the circumstances." RCW 9A.46.020(2)(b). Threatening words are not harassment if the officer knows that the individual does not have either the present ability to

---

[4] We cite the current version of the statute as the relevant language remains the same.

carry out the threat, or the future ability to carry out the threat. RCW 9A.46.020(2)(b); *State v. Boyle*, 183 Wn. App. 1, 11-12, 335 P.3d 954 (2014).

Gorlachev does not dispute that he threatened to cause Simbeck present or future bodily injury or that Simbeck was a criminal justice participant. Gorlachev argues that he did not harass Simbeck because "a reasonable officer would not have been frightened that Gorlachev would carry out his 'threats.'" Opening Br. of Appellant at 12-13.

Specifically, Gorlachev claims that the threats were so absurd and exaggerated that Simbeck could not reasonably fear that Gorlachev would carry them out. Simbeck acknowledged in his testimony that he was not frightened by some of Gorlachev's statements. For example, Gorlachev's threat to "fly a drone over" Simbeck was illogical and therefore did not cause Simbeck to fear for his safety. VRP at 264.

However, Simbeck also testified that he perceived Gorlachev's comment about pulling a knife as a threat. Simbeck knew that Gorlachev was hobbled and immobilized at the time, so Gorlachev did not have the present ability to harm him during the encounter. However, Gorlachev also stated that he would "'remember,'" "find," and "assault" Simbeck. VRP at 243-44. In context of these statements, the jury could infer that Simbeck was reasonably afraid Gorlachev would use a knife against him in the future.

Simbeck also separately testified that he feared for his own safety and his family's safety because Gorlachev said he would find and assault him. Gorlachev argues that these statements are not harassment because Simbeck only expressed a general fear that somebody could find his personal information online and come after him, and a reasonable officer would not fear that Gorlachev specifically would follow through on his threats. However, Gorlachev repeated

Simbeck's name and said he would remember it. And Simbeck knew that his personal information was online and did not think any other Simbecks lived in Pierce County. In the context of Gorlachev's repeated threats of violence against Simbeck during the encounter, a reasonable officer could have feared that Gorlachev would have followed through on his promises to find and harm Simbeck in the future.

Taking all the State's evidence as true, a rational jury could find beyond a reasonable doubt that Gorlachev's statements placed Simbeck in reasonable fear of future bodily injury. Thus, the elements of felony harassment of a criminal justice participant are met.

CONCLUSION

We reverse the conviction for third degree assault, but we otherwise affirm. We remand for the trial court to vacate the conviction for third degree assault and correct the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

CRUSER, C.J.

PRICE, J.